(C.D. 2733)

CHAS. KURZ CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 20, 1966)

*Allerton deC. Tompkins* for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Charles P. Deem*, trial attorney), for the defendant.

Before OLIVER, NICHOLS, and WATSON, Judges; OLIVER, J., dissenting

NICHOLS, Judge: The merchandise involved in these cases, consolidated at the trial, consists of "centering microscopes," imported from France and entered at the port of Philadelphia in November and December of 1957.[1] They were assessed with duty at 45 per

---

[1] The entries were liquidated on May 26, 1961. The case was heard and submitted before Judge Donlon at Philadelphia on April 8, 1964. Plaintiff's brief was filed on July 14, 1964, and defendant's brief on November 10, 1964. The case was resubmitted before the first division as presently constituted on May 17, 1966.

centum ad valorem under paragraph 228(b) of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865 and T.D. 53877, as microscopes, not specially provided for, valued over $50 each. It is claimed by amendment to the protests that they are dutiable at 15 per centum ad valorem under paragraph 372 of said tariff act, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, as machine tools or parts thereof. The original claim for classification at 13¾ per centum ad valorem under paragraph 353 of said tariff act, as modified, is not mentioned in plaintiff's brief and is deemed abandoned.

The merchandise covered by these entries consisted of two classes of merchandise: Dividing heads for boring machines and centering microscopes. The dividing heads were entered and assessed with duty under paragraph 372 of the Tariff Act of 1930, as modified, and the microscopes under paragraph 228(b), as modified. The protests refer to "Dividing Heads for Boring Machines" and "Microscopes," the word "Microscopes" being a typed insert, and state in each instance that the entry "was liquidated under * * * paragraph 372 at the rate of 15%, with a balance due customs" in a specified amount. In the case of protest No. 62/7926 this was $182.40. Reference to the other papers shows that this figure was a net after an upward adjustment for the dividing heads and a reduction for the microscopes. A similar net figure is used in the other protest resulting from increases as to both items. Finally, it is claimed the "merchandise should have been liquidated as machines, nspf, having an electrical element as an essential feature, under paragraph 353 at the rate of 13¾%."

Clearly this was a garbled protest. The collector might have inferred (a) that the protester intended to protest only such merchandise as had been assessed under paragraph 372, (b) that he claimed both types of merchandise to be dutiable under paragraph 353, or (c) that the garbling was so extreme that it was impossible to ascertain what the protester intended to say.

If the collector could have reasonably adopted alternative (a) the protest must fail, because in that event he was called upon to review only that part of his decision which classified the boring heads under paragraph 372, a part not now in issue. But there were two things in the protest itself to notify him that such an interpretation would be erroneous: the inserted reference to "Microscopes" and the netted figure of "balance due." A party intending to limit his protest to the boring heads could not have so expressed himself. Therefore, the protest intended to claim that all the entered merchandise should be classed under paragraph 353, or else it was so garbled, the intent could not be ascertained. The microscopes separately considered have no electrical component but might plausibly be argued to be "parts" of

an article which did. The indications that the entire entry was claimed dutiable under paragraph 353 would seem sufficient, and on the other hand, despite the error in identifying the paragraph under which the microscopes were classified, the collector could not reasonably have excluded them from his review. He was required to relate the protest to the other papers and if that had been done, the mistake in identifying the paragraph under which the microscopes were classified was immaterial. The other papers would have advised him as to this correctly. If the court had jurisdiction, it could, as it did, allow an amended claim before trial.

This is not a case like *Kaiser Reismann Corp.* v. *United States*, 49 Cust. Ct. 236, Abstract 67068, where the merchandise in a multiple item entry whose classification was protested, was identified as "all merchandise in chief value of nylon monofilaments," assessed with duty under paragraph 1211 at 29 percent. Certain other nylon monofilament assessed at 15 percent under paragraph 1302 was held not covered. There, however, the language used was definitely misleading. Here, it is confusing rather than misleading. There the protester furnished no counter-indications to overcome the effect of his seeming to identify the merchandise subject to protest by the paragraph under which the collector classified it. Here, he has. Other cases parallel the instant situation less closely. *American Mail Line, Ltd.* v. *United States*, 34 CCPA 1, C.A.D. 335; *United States* v. *Fred. Gretsch Mfg. Co., Inc.*, 26 CCPA 267, C.A.D. 26; *Hudson Rissman* v. *United States*, 46 Cust. Ct. 133, C.D. 2246; *Shreve & Hays, a/c Engine Imports, Inc.* v. *United States*, 49 Cust. Ct. 325, Abstract 67273; *American Commerce Co. et al.* v. *United States*, 42 Cust. Ct. 98, C.D. 2072.

The Government has not moved to set aside the decision of Judge Donlon allowing the motion to amend, claiming under paragraph 372, as modified, *supra*. These circumstances do not relieve us of the duty, which we have performed, of considering of our own motion whether we have jurisdiction. Still, the Government's position deserves to be given some weight in a doubtful case. We ought to feel some reluctance to deprive a person of his judicial review unless it is clear he has not followed the statutory procedure. Inartistic as the protests were, it is not apparent that the evil the statute seeks to prevent has occurred. True, the claim under paragraph 353 perhaps did not deserve much consideration. Still, such a claim suffices to preserve the court's jurisdiction and make it possible, as here, to consider an amended claim having some possible weight. We hold we have jurisdiction of the amended claim relating to microscopes.

The claim under paragraph 353, though insubstantial, does not seem frivolous as applied to the microscopes inasmuch as they could

possibly be parts of an article having an electrical element or device as an essential feature, as the boring heads could also. This is not the case of a manifestly frivolous, incongruous, or inapposite claim, considered in the companion *Kurz* case, protests 62/7945, etc., decided today. (*Chas. Kurz Co.* v. *United States*, 57 Cust. Ct. 84, C.D. 2734.)

The pertinent provisions of the Tariff Act of 1930, or said tariff act as modified are as follows:

Paragraph 228(b), as modified by T.D. 53865 and T.D. 53877:

Microscopes, finished or unfinished, not specially provided for, valued each—

| * | * | * | * | * | * | * |

 Over $50 _____ 45% ad val.

Paragraph 372:

* * * lawn mowers and machine tools, 30 per centum ad valorem; * * * machines for cutting or hobbing gears, 40 per centum ad valorem; * * * all other machines finished or unfinished, not specially provided for, 27½ per centum ad valorem: *Provided*, That parts, not specially provided for, wholly or in chief value of metal or porcelain, of any of the foregoing, shall be dutiable at the same rate of duty as the articles of which they are parts: *Provided further*, That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal.

Paragraph 372, as modified by T.D. 51802:

Machine tools (except jig-boring machine tools)_____ 15% ad val.

| * | * | * | * | * | * | * |

Machines for cutting or hobbing gears_____ 20% ad val.

| * | * | * | * | * | * | * |

Machines finished or unfinished, not specially provided for:

| * | * | * | * | * | * | * |

 Other (except * * *) _____ 15% ad val.

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of articles provided for in any item 372 of this Part:

| * | * | * | * | * | * | * |

 Other _____  The same rate of duty as the articles of which they are parts.

Paragraph 372, as modified by T.D. 48093:

Jig-boring machine tools_____ 15% ad val.

At the trial, Mr. Frank T. Griswold testified that, in 1957, he was president and general manager of F. T. Griswold Manufacturing Co.

and that that company manufactured, sold, and imported various parts for machines and machine tools. He was familiar with the items described on the invoice as centering microscopes and had purchased them. He had used them himself, had seen them used in machine shops, and had built, assembled, and repaired them. He had never seen them used in places other than in machine shops. They are essentially microscopes, particularly adapted to and for machine tools. They are used to find the edge of a piece of material which is to be machined or to find an ascribed line that would otherwise be impossible to locate. They are physically attached by a shank which can be of various shapes or sizes to fit a particular machine and are mounted as integral parts of that machine. According to the witness, these items are particularly adaptable for machine tools because they "carry a special shank which is of hardened steel to fit the various spindles of different machines" and because they carry a cross-hair reticle in their system that allows an operator to locate the mark or edge of the work piece immediately beneath the microscopes's center or axis. In the opinion of the witness, a centering microscope is essential for the practical use of the machine tool for which it is designed. Centering microscopes are sold as entireties with machine tools. The witness did not know of any use for them except in connection with machine tools. He said that he knew what materials were contained in these microscopes; that they were almost entirely metal by value or weight, and that they contained glass pieces.

The witness knew of centering microscopes produced by others than his supplier and named several. He was shown a catalog entitled "Precision Tooling for Jig Boring and Jig Grinding," published by Moore Special Tool Co., Inc., and stated that the items depicted on page D6 were centering microscopes. That page was received in evidence as defendant's illustrative exhibit A, solely as illustrative of the Moore centering microscopes. The witness identified figures 1 and 2 on a sheet entitled "Centering Microscopes" as illustrative of the centering microscopes at issue here. Said document was received in evidence as defendant's illustrative exhibit B.

Mr. Griswold testified that the centering microscopes imported by his firm are used on lathes, milling machines, verticle or horizontal, boring mills, verticle or horizontal, jig grinders, jig borers, drill presses, and measuring machines. He described the last-mentioned as machines to measure the distance between two lines and said that the microscope enables the operator to center the spindle from one line to the next. He had seen the microscopes used on the Hauser measuring machine, which he said was the same as a jig borer but without a power head. He had found these items very adaptable for a jig borer; that they were "standard equipment with most good

quality jig borers." They are also used on machines for cutting and hobbing gears. They are adaptable to many different machines. They can be mounted by flange, tapered shank, straight shank, and clamping. The particular centering microscopes at issue are mounted by means of a Morse tapered shank, a very common taper. There are various different shanks on the items covered by these invoices. (One item covered by entry 9993 is described as "without taper.") The witness stated that each shank was for a particular machine tool; that each article was designed for a particular machine tool at the time of importation. He did not know of any tools or any machines that are not machine tools on which these microscopes have been used. They are adaptable to many machines by means of changing the shank or spindle.

Defendant claims that the plaintiff has failed to establish a necessary element of its case, namely, that the merchandise is in chief value of metal.

In a few cases, the component material of chief value is difficult to determine and requires full details and extended attention by counsel, witnesses, and the court. In many others, it is rather obvious. We are reluctant to burden the record in the many cases with material needed in but a few. That is avoided if, as here, plaintiff's counsel develops the facts to show component material of chief value *prima facie* with a broad, conclusory statement by a witness who should know. Counsel for defendant could then, as the circumstances may suggest, either (a) object that the testimony is opinion without a proper foundation, or (b) develop by cross-examination that the statement is not based on facts, or that an incorrect way of determining value was used. Omission to do either would connote a willingness that component material of chief value might be decided on the basis of the *prima facie* showing and if nothing further transpired would for practical purposes be tantamount to a stipulation. Cf. *Chas. Kurz Co.* v. *United States, supra.*

Here the witness said the article was "almost wholly of metal." Government counsel said "Objection. Wholly of metal in what way?—By weight or value?" The witness said "Either way." Judge Donlon invited counsel for defendant to develop his point by cross-examination, which he never did. Counsel for plaintiff then brought out by questions that the articles were "Almost entirely metal," both by value and by weight. There was no further objection. Thus the valid point made in the original objection, that the predominance of metal was not shown to be by value, was fully met. As there was no other objection before the court, and no cross-examination on the point, the situation was substantially that supposed in the paragraph immediately preceding this. Nevertheless, the Government returns to

the issue in its brief. It says "it requires no citation of authority to submit that such evidence is wholly inconclusive in establishing the component material of chief value." Such a statement often means that no authority has been found for citation. The brief then refers to the complications that have been developed for contested cases in this field, complications we are well aware of (*John S. Connor, Inc.* v. *United States*, 54 Cust. Ct. 213, C.D. 2536; *Borneo Sumatra Trading Co., Inc.* v. *United States*, 56 Cust. Ct. 166, C.D. 2624; *Wheeler & Miller et al.* v. *United States*, 54 Cust. Ct. 137, C.D. 2521), but hope we have not contributed to their enlargement. Without citation of compelling authority we are not persuaded we must in an apparently uncontested (on this issue) case, require the same detailed proof that would burden the record when the issue was manifestly doubtful.

The witness never explained how one uses a centering microscope. We gather from the record as a whole that, by the shank or with an adapter, the microscope is placed in the spindle or head where the cutting tool is later to go. The operator can then look through the eyepiece, at the work to be done, along the center of the axis of rotation the tool will assume, and determine whether everything is properly lined up. When it is, he takes out the microscope and puts in the tool. From time to time he can replace the tool temporarily with the microscope for inspection of partly completed work, without disturbing the set-up. If this is not correct, plaintiff, who left these important facts to our inference and surmise, is in no position to complain. It follows—if we are right so far—that the article is used only intermittently and while the cutting tool is idle. It further follows that one of these centering microscopes could be used with several machine tools which need not all be identical. Even if the shank will fit only one spindle, with replacement shanks or adapters if the shank is permanently affixed (we are not told whether it is or not), the microscope can readily be used with various machine tools and other machines, as testified. This explains the apparently conflicting allegations of the witness that the shank with the article as imported will fit only one machine, but that the article is capable of use, and is actually used, with many, as also represented in exhibit B, the brochure which describes the imports.

This analysis serves to distinguish the facts herein from those stated in *M. B. I. Export & Import, Ltd., et al.* v. *United States*, 39 Cust. Ct. 363, Abstract 61048; *Engis Equipment Company* v. *United States*, 43 Cust. Ct. 399, Abstract 63510; *Same* v. *Same*, 50 Cust. Ct. 189, Abstract 67391, appeal dismissed 50 CCPA 97, relied on by plaintiff; and *The Parker-Hartford Corporation* v. *United States*, 55 Cust. Ct. 302, C.D. 2594, all of which involved optical devices permanently affixed in use to specific machines, to enable the operators to watch the work or

measure its progress while it was actually going on. We have checked the records in those cases to be sure of this.

The record herein establishes that the imports are used with the following different tariff items: "Jig-boring machine tools," "Machine tools (except jig-boring machine tools)," "Machines for cutting or hobbing gears" (which are a separate tariff item from machine tools), and possibly with "all other machines * * * not specially provided for." It seems plain that a "part" for use with two or more of these items is not classifiable under paragraph 372. It does not meet the exclusive dedication test laid down in *United States* v. *Ford Motor Company*, 51 CCPA 22, C.A.D. 831; and *Lodge Spark Plug Co.* v. *United States*, 49 Cust. Ct. 158, C.D. 2379, appeal dismissed 51 CCPA 129. The articles cannot be considered "parts" of any of these items. *Warehousing Services, Inc.* v. *United States*, 56 Cust. Ct. 260, C.D. 2635, is distinguishable. There the "part" provision in paragraph 369 was held to include a part usable either in automobiles or trucks, which are separate items. But the "part" provision in paragraph 372 is not amenable to this treatment. The difference is that paragraph 369 has a special rate provision for parts, different from the rates for the articles of which they are parts, while in paragraph 372 the rate for parts is stated to be that for the items of which they are parts. Thus the articles are not "parts" under paragraph 372 and the issue of relative specificity between paragraph 228(b) and paragraph 372 is never reached.

We note further that the imports took place in 1957 and the trial in 1964. The testimony as to uses of the article was all in the present tense, and spoke apparently of uses as of the time of trial. Plaintiff offered no evidence bearing directly or inferentially on uses at the time of importation. Our appellate court has held that when tariff classification depends on exclusive dedication to any particular use, the evidence to be relevant must relate to use at the time of importation. *Randolph Rand Corp., J. J. Boll* v. *United States*, 53 CCPA 24, C.A.D. 871. A lapse of 7 years is too long for us to presume that the uses had not changed. See our discussion of this problem in *Acme Venetian Blind & Window Shade Corp.* v. *United States*, 56 Cust. Ct. 563, C.D. 2704, and we cannot here invoke the considerations that rescued the protest in *F. B. Vandegrift & Co., Inc.* v. *United States*, 56 Cust. Ct. 103, C.D. 2617.

Since plaintiff has not shown that the claimed classification is correct, the protests must be overruled whether or not the collector properly classified the merchandise as microscopes, an issue we do not reach.

Judgment will be rendered accordingly.

DISSENTING OPINION

OLIVER, Judge: I agree that plaintiff's claim should be denied but I feel that the protests, as originally filed, fail to confer jurisdiction on this court to decide the dutiable status of the centering microscopes described on the entries involved herein. Section 514 of the Tariff Act of 1930 states, *inter alia*, that the protest be in writing, filed with the collector, "setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto." While this language and that contained in previous acts have been given liberal interpretations by the courts over the years, the one requirement well recognized as indispensible for a sufficient protest is that it "set out the reasons for the objections to the collector's action so that the collector would know what was in the mind of the protestant and, if proper, could take such action as was necessary to make corrections." *American Mail Line, Ltd.* v. *United States*, 34 CCPA 1, C.A.D. 335.

Protest 62/7926 was filed at the port of Philadelphia on July 19, 1961, and pertains to entry number 11650 which was liquidated by the collector on May 26, 1961. This entry covers two classes of merchandise, namely, centering microscopes valued over $50 each and dividing heads for boring machines. The microscopes were entered and liquidated at 45 per centum ad valorem under paragraph 228(b), as modified. The dividing heads were entered and liquidated at 15 per centum ad valorem under paragraph 372, as modified. Due to an advance in value returned by the appraiser, duties were increased by $182.40. Protest 62/7926 reads as follows:

Collector of Customs
Port of Philadelphia, Pa.
Sir:

We respectfully refer to Cons. Entry No. 11650 dated December 11, 1957, covering 3 cases Dividing Heads for Boring Machine, 1 Pkg. Microscopes, imported in our name via AIRPLANE for the account of F.T. Griswold Manufacturing Company.

This entry was liquidated under date of May 26, 1961 under paragraph 372 at the rate of 15%, with a balance due Customs in the amount of $182.40.

This liquidation is protested due to the fact that we believe the merchandise should have been liquidated as machines, nspf, having an electric element as an essential feature, under paragraph 353 at the rate of 13¾%.

In view of the above circumstances we respectfully request that the entry be reliquidated accordingly.

Respectfully,
CHAS. KURZ CO.

Protest 62/7946, filed at Philadelphia on July 24, 1961, pertains to entry number 9993, also liquidated on May 26, 1961. Both the entry

and the protest are in all material respects identical in content to those in protest 62/7926, *supra*.

It will be noticed that the protest in 62/7926, after directing the collector's attention to the entry involved, as well as to the merchandise contained in that entry, proceeds to state that it was liquidated under paragraph 372 at 15 per centum ad valorem. Further, it states that *this liquidation* is being protested and that the merchandise should be liquidated under paragraph 353 at 13¾ per centum ad valorem. It is clear, of course, that the entries were liquidated in part only under paragraph 372, the microscopes being liquidated as entered under paragraph 228(b). Nevertheless, it seems to me that the natural intendment of these protests was to put at issue the collector's action in classifying merchandise under paragraph 372. While identifying both types of merchandise involved in the entries, the protests, in the second and third paragraphs, effectively specify the area of complaint, and in each instance, the collector's report refers to the merchandise covered by the protests as being properly classified within paragraph 372 pursuant to a uniformly established practice. Unlike the majority in this case, I find these reports to be reasonable responses and complete answers to the action initially protested by the importer of record herein.

As it has been held many times before, where two or more kinds of merchandise are involved in entries, there must be a relationship shown between the claim and the particular item or items being challenged. *United States v. Fred. Gretsch Mfg. Co., Inc.*, 26 CCPA 267, C.A.D. 26; *Hudson Rissman v. United States*, 46 Cust. Ct. 133, C.D. 2246; *Shreve & Hays, a/c Engine Imports, Inc. v. United States*, 49 Cust. Ct. 325, Abstract 67273. At the least, we have recognized that this still requires the protestant to identify the action of the collector against which he is claiming. *American Commerce Co. et al. v. United States*, 42 Cust. Ct. 98, C.D. 2072. Therefore, by specifying a particular paragraph under which the collector had classified one kind of merchandise, the protest will not be viewed as covering merchandise classified under a different paragraph even if it recites all the merchandise contained in the entry. *Kaiser Reismann Corp. v. United States*, 49 Cust. Ct. 236, Abstract 67068. Thus, in the instant case, where two kinds of merchandise have been entered and classified under two distinct paragraphs of the tariff act, a claim relating to the collector's action in liquidating merchandise under one of those paragraphs will not support a later claim respecting merchandise liquidated under another paragraph.

Furthermore, where an original pleading is limited by its terms to certain merchandise, plaintiff cannot, via amendment thereto, enlarge his claim to cover merchandise hitherto not covered by timely

protest. As our appellate court has said in *United States* v. *Weigert-Dagen et al.*, 39 CCPA 58, C.A.D. 461:

A protest under section 514, *supra*, may be amended to include a new claim regarding the same items of merchandise covered by the original protest, but, a motion to amend, introducing new merchandise for the first time constitutes a new protest and as such is untimely after the expiration of the 60-day period of limitation provided in section 514. * * *

It is clear that the amendments to these protests, coming in April 1964, were patently untimely. As the record reveals, the action of the circuit judge in granting them was based upon the understanding that there was no question concerning the original protests (R. 3). In any event, such amendments do not become the law in the case so far as to bind this court on the issue of jurisdiction. *Geo. S. Bush & Co., Inc., et al.* v. *United States*, 135 F. Supp. 696, C.D. 1175; *Sweeney & Johnson* v. *United States*, 61 Treas. Dec. 1331, T.D. 45772; *Canada Dry Ginger Ale, Inc.* v. *United States*, 5 Cust. Ct. 267, Abstract 44043. Although neither party may raise the issue, it remains the duty of the court in the final analysis to keep cognizance of and pass upon its jurisdictional power to entertain causes. Cf. *S. Stern & Co.* v. *United States*, 51 CCPA 15, C.A.D. 830.

For the reasons expressed herein, I would dismiss both protests for insufficiency.