(C.D. 2734)

Chas. Kurz Co. *v.* United States

United States Customs Court, First Division

(Decided July 20, 1966)

*Allerton deC. Tompkins* for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Charles P. Deem,* trial attorney), for the defendant.

Before OLIVER, NICHOLS, and WATSON, Judges; OLIVER, J., concurring

NICHOLS, Judge: The merchandise involved in these cases, consolidated at the trial, described on the invoices as goniodrills, was imported from France and entered at the port of Philadelphia on August 16, 1957, and December 24, 1959.[1] It was assessed with duty at 45 per centum ad valorem under paragraph 228(b) of the Tariff Act of 1930, as optical instruments, not specially provided for. It is claimed that the merchandise is properly dutiable at 19 or 20 per centum ad valorem under paragraph 397 of said tariff act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as articles of metal, not specially provided for. Claims for classification under paragraph 372 or paragraph 353 of said tariff act, as modified, have not been mentioned in plaintiff's brief and are deemed abandoned.

The merchandise covered by entry No. 3364, protest 62/7945, consists of two classes of merchandise: One class was entered as goniodrills, parts for boring machines, under paragraph 372, as modified,

---

[1] This case was heard and submitted before Judge Donlon at Philadelphia on April 8, 1964, and was reopened and resubmitted on December 8, 1964. Plaintiff's brief was filed on April 20, 1965, and defendant's brief on December 7, 1965. Further statements were filed by plaintiff on January 14, 1966, and by defendant on January 31, 1966. This case was resubmitted before the first division as presently constituted on May 17, 1966.

and was assessed with duty under paragraph 228(b). The other was entered under paragraph 372, as modified, as micrometric readers, parts of other metal forming machine tools, and duty was assessed under that paragraph. The protest refers to the entry which it says covered "1 cases Dividing Heads for Boring Machine, 1 cs. Micromatic Readers." It says it was liquidated "under paragraph 372 at the rate of 15% with a balance due Customs in the amount of $217.35." It says "This liquidation is protested due to the fact that we believe the merchandise should have been liquidated as machines, nspf, having an electrical element as an essential feature, under paragraph 353 at the rate of 13¾%."

Neither this entry nor the invoice refer to any dividing heads. Only the micrometric readers (not now in issue) were liquidated under paragraph 372. In light of the fact the goniodrills incorporate no electrical component and are themselves not parts of anything, an explicit claim that they should be classified under paragraph 353 is incongruous and inapposite and might well be considered frivolous.

It is true that the entered rate was changed on the goniodrills only, but this is not conclusive as parties frequently protest classifications at which merchandise was entered, the choice of an entered classification not being entirely at the importer's option. It is also true the increased duties referred to in the protest, $217.35, were due to the reclassification of the goniodrills. Even so, we think the collector could not have relied on the protest to inform him what was on the importer's mind. He was not required to ignore parts of it and concentrate his attention only on the parts that made sense.

In the companion *Kurz* case, protest 62/7926, etc. (*Chas. Kurz Co.* v. *United States*, 57 Cust. Ct.—, C.D. 2733), the claim under paragraph 353 was not wholly inapposite to the centering microscopes, though perhaps not very substantial. The protest was clear and straightforward except for the error in stating the paragraph under which the microscopes were liquidated, an error correctable from the other papers. Here, however, if we consider the same alternative interpretations, we come to a different result. If (a) the intent was to protest the merchandise classified under paragraph 372 only, the goniodrills are out. If (b) it was claimed that the whole entry should be classed under paragraph 353, however classified by the collector, it was incongruous and inapposite with respect to the goniodrills. This interpretation further suffers, compared to that in protest 62/7926, because the protest adds the further difficulty that it does not name the goniodrills. The conclusion must be (c) that the protest was garbled beyond satisfactory interpretation. The collector was not required to speculate and guess what the protester intended. Compare *United States* v. *Fred. Gretsch Mfg. Co., Inc.*, 26 CCPA

267, C.A.D. 26, in which the court held that the collector was not required to select between real claims and those which were unrelated to and incongruous with the merchandise.

Protest No. 62/7945 is insufficient to confer jurisdiction over the goniodrills and must be dismissed.

Protest No. 60/10462 covering entry No. 15804 correctly refers to the subject of the protest as goniodrills and nonfrivolously if incorrectly claims classification under paragraph 372. This protest clearly refers the collector to merchandise that was included in the entry, and the objections to protest No. 62/7945 do not apply. It is necessary to consider this protest, as amended, on the merits.

The pertinent provisions of the Tariff Act of 1930, or said tariff act, as modified, are as follows:

Paragraph 228 (b):

* * * all optical instruments, frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, not specially provided for, 45 per centum ad valorem.

Paragraph 397, as modified by T.D. 54108:

Articles or wares not specially provided for, whether partly or wholly manufactured:
      *      *      *      *      *      *      *
Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:
      *      *      *      *      *      *      *
    Not wholly or in chief value of tin or tin plate:
      *      *      *      *      *      *      *
        Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum (except * * *)____ 20% ad val.  19% ad val.

The sole witness at the trial was Frank T. Griswold, who was president and general manager of F. T. Griswold Manufacturing Co. in 1957 and 1959. He testified as follows: The business of the company was the manufacture, importation, and sale of machines and machine tool parts. He was personally familiar with the items described on the invoices as "Goniodrills," and had purchased them. He had seen them used in machine shops, had used them himself, and had repaired and built them himself. An illustration of a goniodrill was received in evidence as plaintiff's illustrative exhibit 1. The witness stated that the device was 7 inches long, 2½ inches high, and 3 inches wide at the large end. As illustrated, it appears to have a V-shaped holder, which is the longest part, and a circular portion which has an eyepiece

at the top and a tubelike portion at the back. The exhibit describes the item as follows:

OPL DRILL POINT CHECK: Measures angle, concentricity and symmetry of twist drills from No. 80 to 1″. Micrometer reads from 0° to 145° by one degree increments. ½ degree easily estimated.

Mr. Griswold testified that a goniodrill is a device to find the exact center point of a twist drill; that it is designed to accurately determine if the twist drill is pointed properly. He said that it is a comparator which compares the shape of a drill to what it should be. In use, a twist drill, a tool having a very sharp tapered point on the end of it, is placed in the V-shaped holder and pushed against two flat surfaces. The device is then held up to the light, daylight or electric, and, by observing whether there is any light between the drill and the plate, the operator can determine whether the angles of the drill are flat and in accordance with the plates against which they are pushed. If light is observed, the drill is off-center. The determination can be made with the naked eye except in the case of drills an eighth of an inch in diameter or less. In such cases, a little magnifying glass that comes with the goniodrill is used. The magnification of the glass is five-power and it is used to aid the eye. According to the witness, the magnifying glass is not an essential part of the goniodrill. He said that the goniodrill is employed "usually without" it, because the "usual size drills you work with are large enough to be observed with the naked eye." The witness had used the device without an eyepiece himself and had observed others so using it. He named the Cincinnati Milling Machine Co., which he said was the largest machine tool manufacturer in the world, and stated that the devices were used there some of the time without the magnifying glass.

The witness testified that the goniodrill had no optical features other than the magnifying glass, had no electrical features, and was not part of a machine tool.

Mr. Griswold stated that he knew the materials contained in the goniodrills and said on direct examination that they were steel, aluminum, and brass. On cross-examination he amplified this by stating that the shank, or extension, was tool steel, hardened and ground; the bead aluminum; the two gears bronze, and the plates against which the drill rests tungsten carbide. He knew the value of the nonmetallic portions because he had "purchased them separately for other purposes." He said that the metal portion constituted 99 percent of the value and the magnifying glass 1 percent. He determined this by deducting the price of the glass, which he knew, from that of the rest of the device. He did not know the exact value of the various metallic components.

After submission, the case was reopened and a stipulation submitted to the effect that the merchandise was not plated with platinum, gold, or silver, nor colored with gold lacquer.

Defendant claims that the plaintiff has failed to establish a necessary element of its case, namely, that the merchandise is in chief value of the metals specified in the pertinent provisions of paragraph 397, as modified, *supra*. The witness, president of the importing company, testified that the metal components constituted 99 percent of the value of the device and the glass 1 percent. The percentages were determined by deducting the value of the glass portion which the witness had purchased separately from the value or cost of the entire article. But he admitted that the plates, an important component, were tungsten carbide.

It appears that the Congress in adopting the 1930 act, did not conceive of tungsten carbide as a metal, for it provided in paragraph 302(g) for "tungsten metal, tungsten carbide, and mixtures or combinations containing tungsten metal or tungsten carbide * * *." The Supplement to Tariff Information on Items in Tariff Bill of 1930 (H.R. 2667) Subject to Conference, page 176, discloses that tungsten carbide was then new and little known. At page 177, the terms "tungsten metal" and "tungsten carbide" are used in a way denoting they are two different products. It would seem, therefore, that the "other metal" in the original enacted version of paragraph 397 could not have included tungsten carbide, it being, of course, not specifically named. But if this were not so, the trade agreement concession under which plaintiff claims, T.D. 54108, leaves out "other metal," applying as it does only as quoted, *supra*. Therefore, the burden on plaintiff is to prove that the merchandise here involved is in chief value of certain metals not including its tungsten carbide components.

Government counsel here did not, as in the companion cases decided today (*Chas. Kurz Co.* v. *United States, supra; Chas. Kurz Co.* v. *United States*, protest 62/10461, 57 Cust. Ct.—, C.D. 2735), acquiesce by not objecting or cross-examining in a broad conclusory statement showing the component material of chief value. He both objected and cross-examined. The result clearly shows that the witness took the tungsten carbide components into account in his statement that the article is 99 percent metal by value. There is nothing to tell us separately the relative value of the tungsten carbide components, nor are we given any reason to think it was insignificant. Therefore, the witness' testimony is wholly vitiated and plaintiff fails to sustain its burden of proof on this vital issue.

Since the plaintiff fails to sustain its claim under paragraph 397, as modified, it is perhaps unnecessary to determine whether the col-

lector's classification under paragraph 228(b) is correct. The record to show whether the article is an "optical instrument" or not is even more deficient than in the companion cases with respect to how the article employs the transmission of light to the eye to achieve its effects. Plaintiff claims the only optical component is the eyepiece, a lens which magnifies five times. It says this can be dispensed with and often is when the operator is testing one of the larger drills. It does not explain why anything done without the lens could not be better done with it, as one would naturally expect to be the case. Removal of the eyepiece looks from the illustration in exhibit 1 to be a piece of extra trouble that one would not take except to prove a point in litigation. On the whole, we deem the presumption of correctness of the collector's classification not overcome. We discuss the pertinent authorities in the companion cases, to which we refer in lieu of repeating them here.

Protest No. 62/7945 is dismissed and protest No. 62/10462 is overruled. Judgment will be rendered accordingly.

### CONCURRING OPINION

OLIVER, Judge: I concur in the dismissal of protest 62/7945 for the reasons expressed in my dissenting opinion in *Chas. Kurz Co.* v. *United States*, protest 62/7926, etc., 57 Cust. Ct. —, C.D. 2733. In all other respects, I am in agreement with the majority decision and judgment in protest 62/10462.