(C.D. 2825)

Marcus S. Bultz *v.* United States

United States Customs Court, First Division

(Decided November 21, 1966)

*Manucy & Maybank* (*Burnet R. Maybank* of counsel) for the plaintiff.
*Barefoot Sanders*, Assistant Attorney General (*Samuel D. Spector, Charles P. Deem*, and *Avram Weisberger*, trial attorneys), for the defendant.

Before Oliver, Nichols, and Watson, Judges

Nichols, Judge: The merchandise in these cases, consolidated at the trial, consists of chairs and other furniture imported from Hong Kong on various dates between 1959 and 1963, inclusive, and entered

at various ports.[1]   The merchandise was assessed with duty at various rates under paragraph 409 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, or as modified by T.D. 55615 and T.D. 55649, as furniture wholly or in chief value of rattan or rattan and the other materials enumerated.   The chairs are claimed to be dutiable at 17 per centum ad valorem and the other furniture at 10½ per centum ad valorem under paragraph 412 of said tariff act, as modified by T.D. 54108, as furniture, wholly or in chief value of wood, not specially provided for.

The pertinent provisions of the tariff act, as modified by T.D. 54108, are as follows:

Paragraph 409:

Furniture, wholly or in chief value of rattan,
    reed, bamboo, osier or willow, malacca, grass,
    seagrass, or fiber of any kind_____* * *     25½% ad val.

[Said rate was reduced to 22½ percent and 20 percent by T.D. 55615 and T.D. 55649 as to merchandise entered on or after July 1, 1962, and July 1, 1963, respectively.]

Paragraph 412:

Furniture, wholly or partly finished, and parts thereof, wholly or in chief value of wood, and not specially provided for:
    Chairs _____* * *   17%   ad val.
    Other furniture_____* * *   10½% ad val.

At the opening of the trial, counsel for the Government moved to dismiss protest 64/16921 on the ground that it was not timely filed and the court had no jurisdiction.   Decision was reserved.   It appears from the official papers that this entry was liquidated on January 23, 1964, and the protest was not received by the collector until March 24, 1964.   The 60th day after the date of liquidation fell on March 23, a Monday.   The protest is, therefore, untimely and must be dismissed. *Slazengers, Inc.* v. *United States*, 39 Cust. Ct. 142, C.D. 1919; *Arista Oil Products Company* v. *United States*, 31 Cust. Ct. 251, Abstract 57492; *United States* v. *Hurlburt & Sons*, 11 Ct. Cust. Appls. 24, T.D. 38638; *Close & Stewart* v. *United States*, 47 Cust. Ct. 370, Abstract 66215; *Railway Express Agency, Inc.* v. *United States*, 30 Cust. Ct. 424, Abstract 57260.

At the trial, Marcus S. Bultz, the plaintiff herein, testified that he imports tropical cane furniture from Hong Kong and that he deals with the furniture trade in most of the Eastern United States.   He has

---

[1] This case was heard before Chief Judge Rao at Charleston, S.C., on March 4, 1965, and February 28, 1966, and was submitted on the latter date.   Plaintiff's brief was filed on April 18, 1966, and defendant's brief on August 26, 1966.   This case was resubmitted before the first division as now constituted on May 12, 1966.

handled furniture made of material, specimens of which were received in evidence as plaintiff's exhibits 1, 2, and 3. Exhibit 1 is identified on the tag as "specimen of 'Yellow Cane' also called 'India Cane' 'Palembang rattan.'" Mr. Bultz testified that it is botanically known as rattan and commercially as cane; that in the channels of commerce, it is known as yellow cane or India cane or Palembang rattan. It consists of a woody rounded vinelike material, about three-sixteenths of an inch in diameter. Exhibit 2 is identified on the tag as a specimen of rattan peel. Mr. Bultz stated that it is botanically speaking rattan because it comes from the rattan vine; that it is rattan peel and is known in the furniture trade as cane. It is flat flexible material about a quarter of an inch wide and very thin. Exhibit 3 is identified on the tag as a specimen of rattan. Mr. Bultz said it was a section from a rattan vine and was known both botanically and commercially as rattan. It is a round piece of a woody substance about an inch and a half in diameter and having peel or bark at one end.

Four chairs imported by plaintiff were received in evidence as exhibits 4, 5, 6, and 7. Mr. Bultz stated that exhibits 4 and 5 were in chief value of rattan peel and that exhibits 6 and 7 were in chief value of yellow cane. The chairs have backs and seats of woven material and are similar in appearance, the chief difference being that the material said to be rattan peel is flat while the material said to be yellow cane is rounded and vinelike.

Mr. Bultz testified that in the broad area of rattan furniture, there are two classes: (1) Furniture in chief value of rattan peel and furniture in chief value of yellow cane, and (2) furniture made of heavy rattan in which a large diameter rattan vine is used for the arms and framework and which is upholstered. He has been selling chairs like exhibits 6 and 7 throughout the eastern states and, in his experience, they are known to the trade as cane chairs. According to the witness, chairs such as exhibits 4, 5, 6, and 7 are regarded by furniture dealers as summer furniture, are known as cane furniture, and are used interchangeably, and no distinction is made commercially between them throughout the country.

Plaintiff's two other witnesses, Fredrich Norman Them and Joseph Harold Sokol, are and have been engaged in the retail furniture business in Charleston, S.C., and have attended furniture markets in other cities. In their opinion, there is no distinction in the trade between pieces like exhibits 4 and 5 and those like exhibits 6 and 7.

The Government's evidence consisted of a report of the United States Customs Laboratory at New York, dated November 22, 1961, of a sample of yellow cane covered by entry 3234, protest 63/8297 (defendant's exhibit A). It states: "In our opinion the sample is rattan (Calamus sp.)."

.

There is attached to entry 27555, protest 63/18744, a report of the United States Customs Laboratory at Philadelphia, stating:

Based on information from the Forest Products Laboratory, Madison, Wisconsin, the sample of "yellow cane" is identified as rattan palm (Calamus Sp.).

In our opinion it is whole rattan.

Webster's New International Dictionary (1953 edition) contains the following definitions:

rattan * * * 1. a Also rattan palm. Any climbing palm of the genera *Calamus* and *Daemonorops*, remarkable for the great length attained by their stems. * * *

calamus * * * 3. *Bot.* A very large genus of pinnate-leaved climbing palms, natives of tropical Asia. They are slender and tufted, and usually climb over the tallest trees by means of the hooks on the petioles. The light and tough stems, over 600 feet long in some species, furnish the *rattan canes* of commerce. * * *

cane * * * 6. *Bot.* a Rattan, esp. split rattan used for wickerwork, the seats of chairs, etc. * * *

Plaintiff does not contest the finding of the Customs Laboratory that the yellow cane in the imported furniture is "botanically" rattan, but claims that in the trade such furniture, nevertheless, is known as cane furniture, and should, therefore, not be assessed with duty as rattan furniture. He cites *Calif-Asia Co., Ltd.* v. *United States*, 39 CCPA 133, C.A.D. 475. That case involved furniture consisting of a frame made of reed covered with a wrapping of cane and a back and seat of woven cane. The court stated "it appears" that "cane" is the "skin" or "peel" of the rattan vine and that the body of the rattan vine after it has been peeled is known as "reed." It held that the furniture was not in chief value of rattan nor in chief value of reed, but that it was in chief value of "cane" wrought or manufactured from rattan. It further held that the Congress distinguished between cane, reed, and rattan in paragraph 409 and that the omission of "cane" furniture meant that it did not intend to provide thereunder for furniture such as that before the court. The court stated (p. 139) :

* * * In the instant case there is furniture composed of two distinct and separate articles, both made from rattan. One is cane and the other is reed. No one, it seems to us, can properly call either of those materials rattan. To do so would be contrary to the common meaning ascribed to cane and reed, as has hereinbefore been so thoroughly set out. * * *

The court, therefore, held the merchandise dutiable under paragraph 412 as furniture in chief value of wood.

The Summary of Tariff Information, 1929, states (pp. 941–942) :

* * * Reeds and cane are products of rattan, which is the trade name of a plant gathered for commercial purposes principally in the

Malay and Philippine archipelagoes. The plant attaches itself to the rough bark of trees by means of sharp spines, and may grow to a length of 200 feet or more. *Diameters range from one-eighth of an inch to an inch or even more.* The rattan is cut from the trees, stripped of its spines, and bundled into lengths of 30 to 35 feet. It is cleaned by a hand process, washed, bleached in a sulphur oven, and graded for diameter. The rattan stems then present a yellow or brownish color, with a slightly polished, smooth surface of considerable hardness. When soaked in water rattan becomes pliable and can be bent or twisted without breaking.

Uses for rattan, outside of its being utilized to produce cane and reeds, include baskets for many purposes * * *; cars for balloons, covering for glass carboys, whip stocks, and furniture.

The skin or outer layer of rattan when stripped from the core of the stem is the *cane of commerce*; the remaining cylindrical core is the reed of commerce. Cane is used for certain types of furniture where the frame of reeds, willow or wood, is wrapped with strips of cane. It is also woven into seats and backs for furniture * * *. [Italics supplied.]

As to furniture of rattan, reed, grass, osier, or willow or fiber, the Summary states on pages 943–944:

* * * Generally the frame is of reed, willow, or wood to give stability, and the frame covered in whole or in part by one or more of the articles enumerated.

The Government says the record is bare of any evidence that the litigated merchandise is not in chief value of rattan. It would indeed appear that to overturn the collector's classification the plaintiff would have to begin by showing which component of each of the items of furniture in litigation was the component of chief value. A variety of articles were imported under the same entries and the record does not clearly identify which of them the protests relate to. The protests state that they apply to furniture variously stated to be of "cane" or "yellow cane." The papers show various furniture items to be, apparently yellow cane. Thus in protest 63/17579 the collector classed under paragraph 409 "Yellow Cane Double Strand arm Polo Chairs," "Yellow Cane round tables," "Yellow Cane 2-shelf rectangular tables," "Yellow Cane double strand arm love seats," "Yellow Cane single strand arm polo chairs," "Yellow Cane basket chairs," "Yellow Cane Malacca Rattan arm chairs." The question of component material of chief value might have different answers for different items.

The plaintiff offered in evidence certain chairs, exhibits 6 and 7, and Mr. Bultz stated that they were in chief value of yellow cane. Presumably he meant that the component material of chief value was the woven material, not the frames or the legs, and that this was yellow cane. We have stated that we will accept as to component material of chief value a "broad, conclusory statement by a witness who should

know." *Chas. Kurz Co.* v. *United States*, 57 Cust. Ct. 73, C.D. 2733. Acc.: *Kobe Import Co.* v. *United States*, 43 CCPA 136, 141, C.A.D. 620. Disregarding for the moment the characterization of the woven material as yellow cane, the testimony seems enough to show that the woven portion of the exhibit chairs, whatever made of, predominates in value over the frames and legs. But we have no way to determine what portion of the entries this testimony applies to. The proffered chairs were never linked up with any specific invoice item, and much of the merchandise was other than chairs.

Plaintiff claims that the material in the chairs, botanically rattan, is "commercially" known as "yellow cane or India cane or Palembang rattan." He does not clearly set forth any contention that the common and commercial meanings differ and the reference to a commercial meaning was apparently intended to distinguish it from a scientific or botanic meaning.

The attribution to plaintiff of an intent to claim a commercial designation different from the common or ordinary meaning would be far from being to his advantage, as it has been authoritatively stated to be a thing "often claimed in customs litigation and rarely established." *Jas. Akeroyd & Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 440, 443, T.D. 42641. We do not think plaintiff will object to our interpretation of his position, and we avoid having to enumerate the many respects in which the instant record fails to establish a commercial designation.

The claim may be restated as being that both commonly and commercially the involved material, though botanically rattan, is not so known or referred to, but as "yellow cane or India cane or Palembang rattan." The Government offered no evidence in opposition to this, and it may be taken as true. But where does it lead us? The *Calif-Asia* case, *supra*, settles the tariff status of merchandise in chief value of "cane," not "yellow cane." "Cane" is described in the Summary of Tariff Information, 1929, quoted *supra*, as the skin or outer layer of rattan when stripped from the core of the stem. This certainly does not describe the material now at bar. The Summary was before the Congress when it enacted the 1930 Act and is highly persuasive if not always conclusive as to what was meant. *United States* v. *J. Eisenberg, Inc.*, 43 CCPA 105, C.A.D. 616; *Sandoz Chemical Works, Inc.* v. *United States*, 43 CCPA 152, 156–157, C.A.D. 623. Cf. *United States* v. *Rosenthal Bercow Co., Inc., et al.*, 46 CCPA 123, C.A.D. 713; *United States* v. *A. J. Taylor of Santa Fe, New Mexico,* 48 CCPA 97, C.A.D. 772. In *Eisenberg, supra,* the court stated (p. 108):

* * * It is too well settled to require citation that such summaries have been recognized by this court as authoritative for the purpose of resolving questions relating to the meaning and scope of terms which appear in the various tariff acts, and in determining the intent of Congress. * * *

We know that "horse mackerel" is not "mackerel"; "corn silk" is not "silk"; "root beer" is not "beer"; "ginger ale" is not "ale"; and "bay rum" is not "rum." We are familiar with such terms as "welsh rabbit," a cheese dish incorporating no rabbit; "Irishman's hurricane," a flat calm, and "French leave," absence without leave. Plaintiff has offered nothing to show that the relationship of "yellow cane" or "India cane" to "cane" is not in the same general semantic category. Mr. Bultz, it is true, sometimes referred to the material just as cane, but when his attention was directed to the exact names of the material, he was careful to use the longer names.

The conclusion seems irresistible that "cane" and "yellow cane" are not the same product for tariff purposes, or at any rate are not shown to be the same in the record before us, and authority that settles the tariff status of furniture of "cane" does not do so for that which is made of "yellow cane." Our appellate court in the *Calif-Asia* case, *supra*, concluded that the Congress by referring to "cane" in paragraph 409 identified it as a distinct item from "rattan." There being no reference to "yellow cane" or "India cane" in that paragraph, there stands no reason why the product, being botanically rattan, is not dealt with for tariff purposes under that name. If any such reason exists, counsel have not called it to our attention and our own research and cerebration have not unearthed it.

Since plaintiff has not shown the component material of chief value of any specific invoice item and has not shown that for tariff purposes yellow cane or India cane is the same as cane, the protests cannot be sustained. Judgment will be rendered accordingly.