**No. 67196.**—Ster-Wood Corp. *v.* United States, protests 58/22470 and 61/14658 (New York).

RAO, Judge: The two protests here involved, which have been consolidated for purposes of trial, relate to certain imported articles variously referred to as wire baskets, wire trays, or outer shells, as well as to other items invoiced as inserts, meshes, and angles. The collector of customs at the port of New York classified all of said merchandise, except the angles, within the provisions of paragraph 339 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, either as hollow ware, or as household utensils, in chief value of iron, and assessed duty thereon, depending upon the date of entry, either at 18 per centum ad valorem, or at 17 per centum ad valorem. The merchandise designated as angles was classified in paragraph 397 of said act, as so modified, as manufactures of iron, not specially provided for, with the consequent assessment of duty at the rate of 19 per centum ad valorem.

The only claim in the protests which is herein relied upon is that said articles consist of parts of electrical dishwashers, which are provided for in paragraph 353 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, at the rate of 13¾ per centum ad valorem.

Insofar as herein applicable, the competing tariff provisions read as follows:

Paragraph 339, as modified by T.D. 54108, *supra*—

Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for * * *:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

  Other base metal:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

  Other_____ 18% ad val.    17% ad val.

Paragraph 397, as modified by T.D. 54108, *supra*—

Articles or wares not specially provided for, whether partly or wholly manufactured:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

  Composed wholly or in chief value of iron, steel * * * or other base metal * * *:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

    Not wholly or in chief value of tin or tin plate:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

      Other * * * _____ 19% ad val.

Paragraph 353, as modified by T.D. 52739, *supra*—

Articles having as an essential feature an electrical element or device * * *:

   *       *       *       *       *       *       *

    Other * * * _____ 13¾% ad val.

Parts, finished or unfinished, wholly or in chief value of metal, | The same rate of
    not specially provided for, of articles provided for in any | duty as the ar-
    item 353 of this Part (not including X-ray tubes or parts | ticles of which
    thereof)_____ | they are parts

The record consists of the testimony of a single witness called by the plaintiff, together with certain physical exhibits illustrative of the imported articles, a trade catalog issued by the plaintiff, and a stipulation of facts entered into after the submission of the case was set aside. The oral evidence given by plaintiff's witness was not controverted. It establishes that all of the imported items form or consist of trays and inserts for holding dishes and glasses in washing machines which are used only in commercial establishments.

The witness testified that the merchandise invoiced as angles, regardless of other description, formed the metal stripping around the bottom of the rack. It was imported either in 19-foot lengths, or "formed up," that is "notched, so that they could be bent at angles, then welded, to make a continuous angle of it, and in some cases punched." After importation, those angles which are in the form of running lengths are cut to size to fit the bottoms of the trays and are welded thereto.

By the stipulation of fact, the parties have agreed that the 19-foot lengths of angles to which the witness alluded were not involved in the instant protests. It is further therein shown that the merchandise described as angles, and represented by invoice items numbered 21, 22, 23, 72, and 74, "consist of rectangular shapes approximately 19¾'' by 19¾'' formed by bending a length of angle iron into said shape, and by adding thereto side runners or center runners, or with the corners notched for holding corner post racks, as the case may be and as described on the invoice."

The finished trays and inserts are sold to dishwashing machine manufacturers for incorporation into dishwashing machines, or to the restaurant equipment trade for resale as replacement parts for dishwashing machines. They cannot be used in a household dishwasher, since that is constructed to take a whole service at one time, whereas these trays are designed to hold multiples of a single item of tableware.

It is further established that a dishwasher could not function properly without the imported articles. Some device is necessary to hold the dishes in place and separated while they are subjected to water spraying. Otherwise, and with only water pressure, dishes would not be washed sufficiently clean, and the washing machine would not perform efficiently. However, while iron racks of the type here involved are the most desirable containers for dishes in the washing process, wooden or plastic racks could be used for the same purpose.

The record also discloses that the involved trays and fittings are incorporated into dishwashing machines, which operate electrically and have as essential features electric motors, pumps, indicators, stabilizers, and controls, and the witness did not know of any commercial dishwashers presently on the market which were not electrical.

Seemingly, the facts thus established would bring the subject articles, after assembly, within the scope of the well-settled rules relating to parts for tariff purposes. The first of these is that "a 'part' of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as*

*such article.*" [Italics quoted.] *United States* v. *Willoughby Camera Stores, Inc.,* 21 C.C.P.A. (Customs) 322, T.D. 46851. The second, that "an integral part of an integral part of an article is an integral part of such article," *United States* v. *American Express Co.,* 29 C.C.P.A. (Customs) 87, 93, C.A.D. 175.

Counsel for defendant contends, however, that the element of essentiality is not satisfied, for the reason that wooden racks or plastic racks may be substituted for iron racks in the operation of dishwashing machines, and, since the machines will function equally well with any of these alternatives, neither one nor the other may be characterized as necessary to its completion, nor considered to be parts of dishwashers for tariff purposes.

In the light of the established fact of record that a dishwashing machine cannot properly clean dishes which are not held in position by some form of rack, and, to that extent, a rack, regardless of its composition, is an integral feature of a dishwashing machine without which it would not function effectively, we question the merit of the argument advanced by defendant. It is the rack, not its component material, which is essential to the operation of a dishwashing machine in a desirable manner. Consequently, it would seem that any rack designed for use in a dishwashing machine which serves the same purpose would constitute a part of that machine.

A question of similar nature occupied the attention of our appellate court in the case of *Steel, Inc.* v. *United States,* 24 C.C.P.A. (Customs) 423, T.D. 48872, wherein, in determining whether certain steel balls were parts of a grinding mill, despite the fact that an alternative grinding element could be employed, the court stated:

The more serious of appellant's contentions is that it is optional, according to the testimony, for the user of a grinding mill to use steel balls such as are here involved or an imported hard rock, and that therefore steel balls are not indispensable to the operation of the grinding mill. We have given this matter consideration and conclude that the mere fact that two articles each serving the same purpose may be optionally used for the completion of a machine does not prevent each of said articles from being a part of a machine. * * * *It* is sufficient to say that, in order for an article to be a part of a machine, it is not necessary that there be no substitute for such article.

In the case of *United States* v. *Sussex Print Works,* 17 C.C.P.A. (Customs) 257, T.D. 43686, it was held that unengraved copper rollers intended for use in printing designs on silk cloth are parts of textile machinery. Had it been shown in that case that steel rollers were also used for that purpose, we do not think that this fact would have affected our conclusion.

Since, when completed with the use of the articles at bar, the racks are parts of electrically operated devices which are only used commercially, they are properly provided for in paragraph 353, as modified, *supra,* as parts of articles having as essential features electrical elements or devices.

By reason of the foregoing, we sustain the claim for classification of the articles in issue within the provisions of paragraph 353, as modified, *supra,* as parts of electrical articles, with the consequent assessment of duty at the rate of 13¾ per centum ad valorem.

Judgment will be entered accordingly.