(C.D. 2774)

THE REMBAR CO., INC. v. UNITED STATES

United States Customs Court, Second Division

(Decided September 20, 1966)

*John D. Rode* (*Ellsworth F. Qualey* of counsel) for the plaintiff.

*J. William Doolittle*, Acting Assistant Attorney General (*James F. O'Hara, Richard J. Kaplan*, and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before RAO, FORD, and DONLON, Judges

DONLON, Judge: The merchandise at bar consists of metal trays (sometimes referred to as boats) and their lids, together with skids which are placed in furnaces as a false bottom on which the trays (or boats) are caused to slide in and out of furnaces. The issue here litigated is whether these are parts of furnaces which have, as an essential feature, an electrical element or device. The claims, in the two consolidated cases, are that the entered articles are such furnace parts, dutiable at 12½ per cent ad valorem under paragraph 353, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade (T.D. 52739).

The collector classified the merchandise in liquidation under various enumerations. The trays and the tray lids were classified as hollowware of base metal, under paragraph 339, as modified by the Sixth Protocol to the General Agreement on Tariffs and Trade (T.D. 54108), dutiable at 18 per cent or 17 per cent, according to the rate effective at the date of merchandise entry. The skids were classified as manufactures of metal under paragraph 397, as modified by the General Agreement on Tariffs and Trade (T.D. 51802), dutiable at 22½ per cent.

Plaintiff has offered no evidence to rebut the presumption of correctness attaching to classification of the lids under paragraph 339, as modified. The protests as to the lids are dismissed for failure to prosecute.

As to the trays (boats) and skids, the competing tariff provisions in relevant part are as follows:

Paragraph 397, as modified by T.D. 51802:

Articles or wares not specially provided for, whether partly or wholly manufactured:

    *      *      *      *      *      *      *

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

    *      *      *      *      *      *      *

Other (except slide fasteners and parts thereof) _____ 22½% ad val.

Paragraph 339, as modified by T.D. 54108:

Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for, whether or not containing electrical heating elements as constituent parts:

    *      *      *      *      *      *      *

Not plated with platinum, gold, or
  silver, and not specially provided
  for, * * *:

\*       \*        \*        \*         \*        \*         \*

   Other base metal:

\*       \*        \*        \*         \*        \*         \*

| | |
|---|---|
| Other _____ | 19% ad val. |
| [effective June 30, 1957] | 18% ad val. |
| [effective June 30, 1958] | 17% ad val. |

Paragraph 353, as modified by T.D. 52739, provides:

Articles having as an essential feature an
  electrical element or device, * * *:
     Electric motors, furnaces, heaters,
       and ovens_____  12½% ad val.

\*       \*        \*        \*         \*        \*         \*

Parts, finished or unfinished, wholly or
  in chief value of metal, not specially pro-
  vided for, of articles provided for in any
  item 353 of this Part * * *_____   The same rate of duty
                                            as the articles of which
                                            they are parts

Plaintiff has a two-fold burden of proof: first to show that these
trays (boats) and skids are *parts* of furnaces, and not merely acces-
sories, as defendant contends; and, second, if they are parts of furnaces,
then further to show that the furnaces of which they are parts have,
as an essential feature, an electrical element or device.

The official papers are not in evidence. Mr. P. W. Blackburn, plain-
tiff's president, testified. Illustrative exhibits were introduced into
evidence.

In *Ster-Wood Corp.* v. *United States*, 49 Cust. Ct. 302, Abstract
67196, Chief Judge (then Judge) Rao discussed "the scope of the well-
settled rules relating to parts for tariff purposes. The first of these
is that 'a "part" of an article is something necessary to the completion
of that article. It is an integral, constituent, or component part,
without which the article to which it is to be joined, could not *function
as such article.*' [Italics quoted.] *United States* v. *Willoughby
Camera Stores, Inc.*, 21 C.C.P.A. (Customs) 322, T.D. 46851. The
second, that 'an integral part of an integral part of an article is an
integral part of such article,' *United States* v. *American Express Co.*,
29 C.C.P.A. (Customs) 87, 93, C.A.D. 175." (Pp. 303, 304.)

What does the record here show, as to parts, by way of meeting the
test laid down in *Ster-Wood* and cases therein cited?

The furnaces with which these trays and skids are used are con-
structed according to specifications, for operation in atomic energy
plants and in the incandescent light industry. Use of the furnaces
was described by Mr. Blackburn, as follows:

Well, in the industries that we are speaking of, to fire parts; chiefly
to clean them up; to get off any oxides usually operating in a reducing

atmosphere such as hydrogen and this reduces any oxide or carbon or any other contamination that may be on the part and also degasses it. In other cases, as in the atomic energy fuel, it is used to fire or to sinter. [R. 8, 9.]

As to the meaning of the terms "reducing" and "sintering," Mr. Blackburn said:

Reducing is a chemical term where you change an oxide in this case to a metal. If this is fired at high temperature, in the hydrogen atmosphere, the oxides will be combined with hydrogen and leaves a pure iron. Sintering means to take a pure metal or material and fire it or sinter it. The two words are synonymous. Sintering means to take a pure metal or material and fire it or sinter it at a high temperature in order to hold together. [R. 9.]

The boats, or trays, are used as containers in which the articles to be cleaned, or sintered, are placed when inserted into the furnace. The skids, once installed, remain in the furnace, to protect the soft bottom of the furnaces. The trays (boats) are placed on the skids, and are moved in and out of the furnace. Due to the very high temperatures at which sintering is done, the length of time required, the extreme requirements for metal purity and non-oxidation in the industries that are served, and the varying types of articles to be sintered, the trays, or boats, are all designed to particular specifications, both as to shape and size.

It seems clear that the skids, constructed to be installed in the furnace, are parts of the furnaces. Sintering is shown to be the purpose for which the furnaces were designed and constructed. The skids are necessary, both to protect the soft furnace bottom and so that the articles to be sintered can be inserted into the furnace operating at high temperatures, and removed from it after the sintering operation is completed. The skids not only are essential; when installed, they are an integral part of the furnace. They meet both tests laid down by Chief Judge Rao in the "well-settled rules" cited, *supra*.

The issue as to the trays, or boats, is less clear, whether they are or are not parts of the furnaces with which they are used.

A recent decision of our appeals court is *Gallagher & Ascher Company* v. *United States*, 52 CCPA 11, C.A.D. 849, involving auxiliary heaters for installation in Volkswagen automobiles. The trial court, in *idem*, 51 Cust. Ct. 232, Abstract 68052, held that, on the record before it, the imported heaters were not parts, citing *United States* v. *Willoughby Camera Stores, Inc.*, 21 CCPA 322, T.D. 46851, as authority for the following definition of a "part":

* * * a "part" of an article is something necessary to the completion of that article and that it is an integral, constituent, or component part, without which the article to which it is to be joined could not function as such article. [P. 234.]

Referring to this statement by the trial court, and its own prior decision in *United States* v. *Antonio Pompeo*, 43 CCPA 9, C.A.D. 602, holding superchargers to be parts of automobiles, the appeals court, in *Gallagher & Ascher, supra*, said:

It is of more than passing interest to note that *Willoughby* was decided in 1933 and *Pompeo* in 1955. * * *

In further distinguishing *Pompeo* over *Willoughby*, this court continued:

> The problem is not whether or not automobiles are customarily manufactured with superchargers, but rather what is the nature and function of the imported superchargers. At the time of importation these superchargers * * * *are dedicated irrevocably for use upon automobiles*. Such being the fact, it is unrealistic to attempt to determine the nature of the superchargers apart from their *undisputed ultimate use*. The *Willoughby* case upon which the Government relies so heavily did not turn upon the fact that the cameras were not designed to operate with tripods. As a matter of fact the court indicates at 21 CCPA (Customs) 323 that the cameras had "sockets" designed to receive the tripods. The court considered, rather, the *function performed by the tripod when applied to its ultimate use*, and concluded that in that use it was not a part of a camera. As we understand the *Willoughby* case, it would have made no difference in the result even if the tripods had been imported in physical attachment to the camera. [Emphasis copied.]

After analysis of prior decisions, the appeals court in *Gallagher & Ascher*, in reversing the lower court, laid down as a test, seemingly, whether the imported articles are dedicated to a sole use and "for no other use," which is a useful function. While the auxiliary heaters for Volkswagen automobiles are optional equipment, they were held to serve a useful function, to which they were solely dedicated and "for no other use."

The record before us shows that the boats, or trays, were manufactured for use in particular furnaces, in conformity with the specifications required for such use, and that this was the useful function of sintering, the sole function of the furnaces.

But for one distinction in the facts, *Gallagher & Ascher* would seem to be controlling of our decision here as to the boats, or trays. That distinction is that these boats, or trays, are not attached to the furnaces. The heaters were attached to the Volkswagens. Our appeals court said, in *Gallagher & Ascher, supra:*

* * * When once attached to the automobile to which it was solely dedicated and in the manner disclosed, and in the performance of the function for which it was designed, it became a part of the automobile within the purview of paragraph 369(c) of the Tariff Act of 1930, as modified.

However, as supporting the concept that attachment is not essential to classification of these boats, or trays, as parts, there are two decisions that were cited by plaintiff.

In *Steel, Inc.* v. *United States*, 24 CCPA 423, T.D. 48872, certain forged steel grinding balls were used solely in grinding mills to pulverize ore or cement. They were placed in an outer cylindrical shell, but not attached to it. The appeals court said:

Appellant contends that, as the balls are not attached to the shell, they are not parts of the machine. We know of no rule which requires that an article, in order to constitute a machine, must have all of its parts attached together. The steel balls respond to the motor power of the machine by revolving or tumbling with the revolutions of the shell, and they, or an equivalent article, are essential to the completion of the machine as a grinding mill. [P. 425.]

In *Ster-Wood Corp.* v. *United States, supra,* the alleged parts were trays for dishwashers. The trays were removable. They were not attached. However, they were essential to contain dishes, the washing of which was the sole function of the dishwasher.

The record before us shows that, in furnaces constructed solely for use in sintering, these specially designed trays, or boats, were essential to contain the articles to be sintered. Although removable, and not attached, they are parts of the sintering furnaces.

As to whether the furnaces (of which these boats, or trays, and skids are parts) do or do not meet the requirements of paragraph 353 in that they have as an essential feature "an electrical element or device," it is plaintiff's contention that the furnaces do have as an essential feature an electrical element or device.

There are in evidence (exhibit 5) certain catalog illustrations of furnaces. They were offered by plaintiff in support of Mr. Blackburn's testimony that the furnaces are of different types and designs, and that the illustrations are of three different furnace types and designs. On this explanation of the limited purpose for which the illustrations were offered into evidence, the presiding judge overruled defense counsel's objection to the offer, which objection was based on the fact that the illustrated furnaces had not been connected by any testimony with the furnaces in which the articles at bar are used. Exhibit 5 simply illustrates furnaces that usually operate at heats between 2,000 and 3,000 degrees Fahrenheit, the heats at which the sintering furnaces operate.

Do the furnaces for which these trays, boats, and skids are designed and with which they are used, have as an essential element an electrical element or device? While much of Mr. Blackburn's testimony is general as to high-heat furnaces, and not directed specifically to the furnaces with which these trays, boats, and skids are used, he states

(R. 35) that electricity is the element that is always used "in such furnaces." This is so, he said, because the heating element is molybdenum; fuels other than electricity would contaminate the atmosphere within the furnace, which would "sublime" the molybdenum at temperatures above 600 degrees centigrade; and in the industries in which these furnaces are used and for which they are specially designed, namely, atomic energy plants and the incandescent lamp industry, an uncontaminated atmosphere is essential for the sintering operation. At the high heat temperature to which the molybdenum is heated in the furnaces, the molybdenum would go, if oxidized, from a solid state to a gaseous state. Hence, so Mr. Blackburn testified, molybdenum as a heating element must be used in an atmosphere that is free from oxygen, and an oxygen-free atmosphere is obtainable only when electricity is used as an essential element of the sintering furnaces.

Judge Ford, in the recent case of *F. B. Vandegrift & Co., Inc.* v. *United States*, 56 Cust. Ct. 325, C.D. 2644, summarized the standards for determining the essentiality of an electrical element or device, as follows:

The criteria for determination of whether an article has as an essential feature an electrical element or device was clearly set forth in the case of *United States* v. *Dryden Rubber Co.*, 22 CCPA 51, T.D. 47050, which case has been cited with approval for these many years. Basically, for an article to fall within the purview of an article "having as an essential feature an electrical element or device," the electrical feature must be essential and without which the article will not function normally for the purpose intended. The court, in the case of *Keer, Maurer Company* v. *United States*, 48 Cust. Ct. 205, C.D. 2336, in interpreting the criteria as set forth in the *Dryden* case, *supra,* stated, "In other words, if an article has been designed to operate by electrical power, and cannot normally function otherwise, it is an article with an essential electrical feature * * *. If, however, the substitution of nonelectric features for the electrical ones can be made without substantial modification or reconstruction of the functional properties of the machine, it is not an article having as an essential feature an electrical element or device within the meaning of said paragraph 353." See also *Ralph C. Coxhead Corp.* v. *United States*, 22 CCPA, 96, T.D. 47080; *W. C. Sullivan & Company* v. *United States*, 46 Cust. Ct. 31, C.D. 2229.

Applying the test stated by Judge Ford, we find on the record before us that the electrical feature is essential and without electricity the furnaces will not function normally for the purpose intended.

That the articles at bar are in chief value of metal, or hollowware, does not bring them within the enumerations of either paragraph 397 or paragraph 339, inasmuch as both are enumerations limited to articles not specially provided for. In our opinion, these articles are specially provided for in the paragraph 353 enumeration.

The protest claim that the imported articles described as boats (or trays) and as skids are parts of furnaces that have an electrical element as an essential feature is sustained.  The like claim as to articles described as lids is dismissed for failure to prosecute.

The protests are overruled as to all other claims and all other merchandise.

Judgment will be entered accordingly.