BEFORE THE FIRST DIVISION, JANUARY 31, 1963

No. 67391.—Engis Equipment Company *v.* United States, protest 249256–K/6506 (Chicago).

OLIVER, Chief Judge: This protest relates to certain items of merchandise that are described on the invoices as follows:

> Viewing screen, complete
> Illuminating System without filter unit
> Filter Unit

Duty was levied thereon at the rate of 45 per centum ad valorem under the provision in paragraph 228(b) of the Tariff Act of 1930, for optical instruments, not specially provided for. Plaintiff claims that the merchandise is properly classifiable as parts of machine tools, not specially provided for, carrying a dutiable assessment of 15 per centum ad valorem, under paragraph 372 of the Tariff Act of 1930, as modified by T.D. 51802. The provisions invoked by plaintiff appear in amended paragraph 372 as follows:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 372 | Machine tools (except jig-boring machine tools) | 15% ad val. |
| * | * * *. * | * * |
| 372 | Parts, not specially provided for, wholly or in chief value of metal or porcelain, of articles provided for in any item 372 of this part: | |
| | Textile pins | 20% ad val. |
| | Other | The same rate of duty as the articles of which they are parts. |

Classification of merchandise as machine tools is governed by statutory definition that appears in paragraph 372, as originally enacted, as follows:

PAR. 372. * * *: *Provided further*, That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal.

When the protest was called for trial, counsel for plaintiff stated that the "issue in this case is the same as in the case of Engis Equipment Company v. United States, Abstract No. 63510." (R. 2.) The record in the cited case was incorporated herein upon motion by counsel for plaintiff and without objection by counsel for defendant. Neither party offered any additional evidence. Thus, the present case comes before us as a retrial of *Engis Equipment Company* v. *United States*, 43 Cust. Ct. 399, Abstract 63510.

The following factual phase of the case is taken from our previous decision, Abstract 63510, *supra*. The items in question serve no useful purpose by themselves, but, in order to be utilized, they must be permanently fitted to the Sheffield micro-form grinder (model CT–1157), plaintiff's exhibit 1, protest 306885–K, which "has the function of grinding shaped flat or cylindrical parts to a predetermined contour." The vice president of the plaintiff corporation—an importer of machine tools and equipment therefor—who was plaintiff's sole witness in the original presentation of this issue, Abstract 63510, characterized the Sheffield micro-form grinder (model CT–1157), exhibit 1, *supra*, as a "universal grinder," and explained its operation as follows:

So that this universal grinder can function for the purpose for which it was designed at the top there is a board on which a magnified drawing showing the outline of the part to be produced on the machine is placed. Then through a stylus which the operator places over the outline of the drawing the optical viewing unit, which is the principle of the imported parts, is controlled in its position and moved at the ratio of 50 to 1. Then the operator, looking either into the screen of this unit or into the microscope, can determine as to whether or not the shadow of the work piece towards the grinding wheel, the edges of which are underneath the lower end of this viewing unit, are at the center. If this is not the case he either has to operate slides in the machine to bring them into the center and cause the part to be ground off by the grinding wheel until the outline of the part to be machined would be as nearly identical with the outline of the drawing which was on the pantograph board.

The manner of use of the present merchandise was set forth in our previous decision, Abstract 63510, *supra*, as follows:

The items in question are mounted in a black frame and installed on the top of the Sheffield micro-grinder. The item, described as "Viewing Screens complete," consists of a screen and a microscope eyepiece, fitted to the micro-grinder as a unit. By turning a knob on the micro-grinder, the operator may have a projection of the image on the screen, or use the eyepiece, which gives a clear shadow image of the work piece and the grinding wheel, which is below the lower end of this micro-projection unit. The use of the screen or the eyepiece is a matter of preference for the operator. The same degree of magnification is acquired from both. When the use of the microscope eyepiece is sufficient for the operator's purpose, the principle of projection is not involved. The "Illuminating Systems without filter unit" consist of a tube with a means for mounting a 48-watt light bulb in it, a mirror, cover glass, and one lens, so that the light from the bulb will be thrown strongly in the proper direction toward the viewing unit. The "Filter Units" consist of a metal ring, containing a green glass filter, so that the light, when passing through, will be losing most of its intensity and also get a green color. * * * The sole use of the items in question is as a permanent installation in the Sheffield micro-grinder, model CT–1157, that is designed for use with the optical equipment in question and without which the micro-grinder cannot be operated.

In the said decision, Abstract 63510, we found that "the articles under consideration are necessary to the completion of the Sheffield micro-grinder, which

cannot properly function without the present merchandise permanently installed therein," and held, under the principles enunciated in *United States* v. *Willoughby Camera Stores, Inc.*, 21 CCPA 322, T.D. 46851, and *United States* v. *Antonio Pompeo*, 43 CCPA 9, C.A.D. 602, the merchandise to be parts of the Sheffield micro-grinder (model CT-1157). Our conclusion was stated as follows:

\* \* \* Since the micro-grinder is a machine tool, within the statutory definition thereof in paragraph 372, *supra*, the merchandise involved herein is properly classifiable under the provision for parts of machine tools in paragraph 372, as modified, and dutiable thereunder at the rate of 15 per centum ad valorem, as claimed by plaintiff, and we so hold.

Retrial of the issue before us follows instructions, issued to customs officials by the Commissioner of Customs (95 Treas. Dec. 32, T.D. 55028), "to limit the application of Abstract No. 63510 to the importation involved in that case," as "it is believed that it is questionable whether the merchandise is in chief value of metal and is in harmony with the principle of the decision of the United States Court of Customs and Patent Appeals published in T.D. 46078."

The matter of the component material of chief value in the present merchandise is not disputed. During the course of the hearing of this case, counsel for the respective parties stipulated that "the merchandise in question is in fact in chief value of metal." (R. 2–3.)

The decision of our appellate court referred to in the order of the Commissioner of Customs, T.D. 55028, *supra*, is *United States* v. *Clay Adams Co., Inc.*, 20 CCPA 285, T.D. 46078, which involved merchandise that the court described as follows:

The importation consists of the combination of a miscroscope and a projecting apparatus which is called "Promi" and styled by its sellers as a "Microscopic drawing and projection apparatus." It embodies the principle of the microscope, which magnifies the specimen, and a projecting apparatus which, through the use of a lens and a light, projects the magnified image of the specimen downward on a sheet of paper where the reflected image is shown in a picture or reflection about seven inches in diameter, or upon a screen on the wall where the image is three or four feet in diameter. The evidence shows that the devices are used in biological laboratories, in institutions of learning, in pathological laboratories, in hospitals, and in laboratores of industrial concerns such as paper mills, where the examination of microscopic specimens is desired.

Assessment in the *Clay Adams* case was made at the rate of 45 per centum ad valorem under paragraph 228(b) of the Tariff Act of 1930, and the importer claimed classification under paragraph 360, carrying a dutiable rate of 40 per centum ad valorem. The competing paragraphs, so far as pertinent, read as follows:

PAR. 228. (b) \* \* \* photographic or projection lenses, \* \* \* microscopes, all optical instruments, frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, not specially provided for, 45 per centum ad valorem.

PAR. 360. Scientific and laboratory instruments, apparatus, utensils, appliances (including surveying and mathematical instruments) and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for, 40 per centum ad valorem; \* \* \*.

In sustaining the collector's classification of the merchandise under paragraph 228(b), the court, in the *Clay Adams* case, held that since the importation was concededly an optical instrument and consisted of a combination of a projection lens and a microscope, there was no "plausible reason to conclude that Congress intended to have a different rate of duty apply to a combination of a projection lens and a microscope than that which it made applicable to the units of the combination when imported by themselves."

We find nothing about the *Clay Adams* case to influence or control the disposition of the present case. The classes of merchandise, as well as the legal issues, are materially different in both cases. The present case involves three items, generally identified on the invoices as a viewing screen, an illuminating system, and a filter unit, which, at the time of importation, are dedicated to exclusive use in a particular Sheffield micro-grinder, model CT–1157, and, when installed therein, become integral, constituent, and component parts, enabling the operator thereof to make the proper adjustments in the course of working on the various shapes and sizes of metal on which the micro-grinder operates. The basic issue in the present case concerns the rule governing classification of merchandise as "parts" of an article, which was in no way involved in the *Clay Adams* case. The cited case is clearly distinguishable from the present one.

The doctrine of relative specificity, suggested in defendant's brief as being applicable herein, is a rule of construction that is employed where necessary to give legislative intent and which may be invoked when an imported commodity might readily find classification under either of two paragraphs were the other not present. *Roche-Organon, Inc.* v. *United States*, 35 CCPA 99, C.A.D. 378, and the *Clay Adams* case, *supra*. The viewing screen, illuminating system, and filter unit, involved herein, are used collectively to form the viewing unit of a particular model of micro-grinder, which cannot be operated without these imported articles. The items in question are not optical instruments; they are equipment whose combined optical properties become serviceable after the articles are permanently installed in the grinding machine tool, of which they are essential components. The principle of relative specificity is not a proper consideration herein.

To uphold the proposition advanced by defendant, would create the anomalous situation of having the micro-grinder being provided for as a machine tool, and its parts being classifiable as optical instruments. Such an anomalous result is prevented by the clear and unambiguous language of paragraph 372 which defines a machine tool as "any machine operating other than by hand power which employs a tool for work on metal," and which also provides that parts of machine tools shall pay the "same rate of duty as the articles of which they are parts."

For all of the reasons hereinabove set forth, as well as those stated in our previous decision, Abstract 63510, *supra*, we adhere to our original conclusion, with respect to this class of merchandise, and hold the articles in question to be properly classifiable under the provision for parts of machine tools in paragraph 372, as modified, and dutiable thereunder at the rate of 15 per centum ad valorem, as claimed by plaintiff.

The protest is sustained and judgment will be rendered accordingly.