ENGIS EQUIPMENT COMPANY
v.
UNITED STATES.
C.D. 3413; Protest 63/498–13145.

United States Customs Court,
First Division.
April 22, 1968.

Wallace & Schwartz, Chicago, Ill. (Joseph Schwartz, Chicago, Ill., of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Herbert L. Warren and Harold L. Grossman, New York City, trial attorneys), for defendant.

Before WATSON and MALETZ, Judges.

MALETZ, Judge:

This case involves merchandise which was described on the commercial invoice as "Sets of machine tool scales and projectors." The merchandise consists of (1) two projectors or viewers which were classified by the collector under paragraph 228(b) of the Tariff Act of 1930 as optical instruments, not specially provided for, and assessed with duty at 45 percent ad valorem;[1] (2) two scales or graduated measures which were classified as rules under paragraph 396 of the Act, as modified, and assessed with duty at 22½ percent ad valorem;[2] and (3) two zero setting attachments which were classified under paragraph 397 of the Act, as modified, as manufactures of steel, not specially provided for, and assessed with duty at 19 percent ad valorem.[3]

Plaintiff claims that the collector's classifications are erroneous and that all the articles involved are properly classified under paragraph 372 of the Tariff Act of 1930, as modified, as parts of jig-boring machine tools dutiable at 15 percent ad valorem.[4] As basis for this claim, plaintiff contends that the record establishes that the projectors, scales, and zero setting attachments in question are dedicated to use as parts of an optical jig borer and are useful for no other purpose, and that the optical jig borer could not function without the imported articles. It also contends that the record establishes, in addition, that the projectors are in chief value of metal. (The scales and zero setting attachments are conceded by defendant to be in chief value of metal in view of their having been classified by the collector under paragraphs 396 and 397 of the Act.)

The record consists of the oral testimony of one witness for the plaintiff dealing with the question of whether the imported articles are parts of jig-boring machine tools; the deposition of another witness for plaintiff on the question of the projectors' component material of chief value; and four exhibits (including

1. Paragraph 228(b) of the Tariff Act of 1930 provides:

 (b) Azimuth mirrors, parabolic or mangin mirrors for searchlight reflectors, mirrors for optical, dental, or surgical purposes, photographic or projection lenses, sextants, octants, opera or field glasses (not prism binoculars), telescopes, microscopes, all optical instruments, frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, not specially provided for, 45 per centum ad valorem.

2. Paragraph 396 of the Tariff Act of 1930, as modified by T.D. 52739, provides:

 Calipers, rules (except folding rules wholly or in chief value of aluminum), and micrometers; all the foregoing, if hand tools, and parts thereof, wholly or in chief value of metal, not specially provided for. . . . . 22½% ad val.

3. Paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108, provides:

 Articles or wares not specially provided for, whether partly or wholly manufactured:

 * * * * *

 Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

 * * * * *

 Not wholly or in chief value of tin or tin plate:

 * * * * *

 Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum (except * * *) . .
 . . . . . . . . . . 19% ad val.

4. Paragraph 372 of the Tariff Act of 1930, as modified by T.D. 48093, provides:

 Jig-boring machine tools 15% ad val.
 Paragraph 372 of the Tariff Act of 1930 provides:
 * * * *Provided*, That parts, not specially provided for, wholly or in chief value of metal or porcelain, of any of the foregoing, shall be dutiable at the same rate of duty as the articles of which they are parts: *Provided further*, That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal.

the deposition). The witness who testified orally was Wendell F. Carney, a sales engineer associated with Engis Eastern Corporation, a firm which is engaged in developing and evaluating engineering applications for equipment that is imported or manufactured by Engis Equipment Company—the plaintiff-importer in this case. Carney, it was shown, holds an associate degree in machine and tool design and has had many years' experience in the manufacture, design, buying, and sale of machine tools and allied equipment. His testimony was directed to an optical jig borer manufactured by the Atlantic Machine Tool Works, Inc. (Atlantic) of Newington, Connecticut, a customer of plaintiff. (The machine was first introduced on the market by Atlantic in 1950).

On direct examination, Carney testified that he was familiar with the imported articles and that he has seen similar or identical articles incorporated in optical jig borers manufactured by Atlantic. Jig borers are used for the boring of holes in pieces of metal, and the witness testified that the scales and projectors here involved furnish the means of positioning the jig borer to an accuracy of one ten-thousandth of an inch. The zero setting attachments, he made clear, are used to obtain the initial position from which subsequent positions are read off from the graduations on the scales which indicate where the holes are to be bored. He testified that the graduations on the scales are so fine (permitting, as they do, positioning to one ten-thousandth of an inch) that they are not visible to the naked eye; they are made visible by the imported projectors which magnify the graduations about 20 times.

Referring to the Atlantic jig borer, Carney emphasized that the design of that machine was predicated upon the availability of the scales and prejectors, and that it would not be a jig borer without them. Asked "whether in their condition as imported the three items here in question would have any other use than on a jig borer," he replied: "Those items were specifically designed or engineered for this application. They would be useless, in my opinion, for anything else." (R. 13)

Carney further testified that the imported items are permanently installed in the jig borer at the time of the latter's manufacture and were sold to Atlantic for incorporation into its jig borer. The Atlantic jig borer, he continued, operates by electric power and employs a tool for work on metal. He stated that once the three items in question are incorporated into the jig borer, it cannot be used without them "[b]ecause if any part of the measuring system malfunctions you can no longer make your coordinate positioning. * * * It is no longer a jig borer if any of these features become inoperative." (R. 16)

On cross-examination, Carney testified that the projectors, scales, and zero setting attachments in question were manufactured by Hilger & Watts, Ltd., a British concern, and that that concern had manufactured similar items in 1949 (prior to the introduction of the Atlantic jig borer). The following colloquy then took place (R. 23):

Q. Can you tell the court to what use those items were put in 1949?— A. Items of this manufacture could be adapted to any device where you wish to make coordinate dimensions accurately.

Q. Was that in fact the use of those items? Is it in fact?—A. I could not definitely say. People have purchased these items for all types of purposes. I am only concerned with the machine tool industry.

The imported items, Carney declared, are not standard equipment, adding: "[I]n this business nothing is standard. We [i. e., Engis] offer certain designs and types that could be adapted to various devices, but unfortunately very seldom is the customer ever in a position to accept the standard one." (R. 23) "We must always modify it," he continued, "either make it read backward or upside down or from left to right or right to

left. It's not a standard off-the-shelf thing." Ibid.

Carney further testified on cross-examination that the scale is dovetailed to the jig borer; that the jig borer has a special bracket to hold the projector in its desired position; and that the zero attachment is either dovetailed or bolted into the machine. He stated that it would be possible to purchase similar optical devices which could be applied to a jig borer, but not to an Atlantic jig borer without redesigning it. Finally, he stated that an optical jig borer is inoperative without its optical system, but that other types of jig borers that are manufactured do not use optical systems.

 We consider now whether plaintiff has shown by the record thus made that the imported articles are parts of jig-boring machine tools. It is fundamental that to be classified as a "part" an import must be manufactured and dedicated solely for use on a particular article and be useful for no other purpose. E. g., Davies Turner & Co. v. United States, 13 Cust.Ct. 190, 198–99, C.D. 893 (1944), and cases cited; Lodge Spark Plug Co. v. United States, 49 Cust.Ct. 158, C.D. 2379 (1962). In addition, the import must be "an integral, constituent or component part, without which the article * * * could not *function as such article."* [Emphasis quoted.] United States v. Willoughby Camera Stores, Inc., 21 CCPA 322, 324, T.D. 46851 (1933), and cases cited. See also e. g., United States v. Antonio Pompeo, 43 CCPA 9, 11, C.A.D. 602 (1955); Gallagher & Ascher Company v. United States, 52 CCPA 11, C.A.D. 849 (1964). The record leaves no doubt that the imported articles meet the latter requirement in view of Carney's testimony—which was neither impeached nor rebutted—that the Atlantic jig borer was designed to utilize the imported scales and projectors and would be useless without them. What remains is to determine whether the record also establishes that the imported articles were dedicated to

use on a jig-boring machine tool and had no other useful purpose. The only evidence supporting this is Carney's testimony on direct examination (which is quoted above) that the imported articles were specifically designed or engineered for the Atlantic jig borer and that, in his opinion, the articles would be useless for anything else. However, this testimony is negatived by Carney's further testimony on cross-examination (which is also quoted above) (i) that in 1949, prior to the introduction of the Atlantic jig borer, Hilger & Watts had manufactured articles similar to those involved here; (ii) that at that time such articles could be adapted to any device where it was desired to make coordinate dimensions accurately; and (iii) that persons had purchased such articles for all types of purposes. Considering that Hilger & Watts equipment—which was similar to the equipment involved here—was on the market before the Atlantic machine was even introduced, it is difficult to see how it could have been specifically designed or engineered by Hilger & Watts for that machine. But even aside from this, plaintiff's proof has failed to establish that the imported articles were not commercially and practicably usable with a multitude of other devices. To the contrary, the inference from the record is that the imports were in fact commercially practicable for other purposes—which inference follows from Carney's testimony on cross-examination that prior to the introduction of the Atlantic jig borer, articles manufactured by Hilger & Watts that were similar to the imported articles had a variety of uses. Lacking explanation, it would strain credulity and logic to believe that once the Atlantic jig borer came on the market, there took place a transformation whereby the Hilger & Watts equipment could be used only in connection with a jig borer. Carney's testimony, it is true, shows that *after* importation, plaintiff modified the articles in question so that they thereafter became suitable solely for use as parts of specified jig-boring

machine tools. Such evidence, however, is irrelevant; for it is a settled principle that classification is determined on the basis of the condition of the imported articles at the time of importation and not afterward. E. g., Worthington v. Robbins, 139 U.S. 337, 341, 11 S.Ct. 531, 35 L.Ed. 181 (1891); Randolph Rand Corp. v. United States, 53 CCPA 24, C.A.D. 871 (1966); United States v. The Winkler-Koch Engineering Co., 41 CCPA 121, 122, C.A.D. 540 (1953). We find, in short, that plaintiff's proof fails to show that the Hilger & Watts equipment, as imported, was manufactured and dedicated solely for use on jig-boring machine tools and was useful for no other purpose. It must, therefore, be concluded that plaintiff has not established that the articles in issue are parts of jig-boring machine tools.

In support of its argument that a contrary conclusion is called for, plaintiff relies on The Parker-Hartford Corporation v. United States, 55 Cust.Ct. 302, C.D. 2594 (1965); Engis Equipment Company v. United States, 50 Cust.Ct. 189, Abstract 67391 (1963); Engis Equipment Company v. United States, 43 Cust.Ct. 399, Abstract 63510 (1959); and M.B.I. Export & Import, Ltd., et al. v. United States, 39 Cust.Ct. 363, Abstract 61048 (1957). In each of these cases, the court held that imports which were classified by the collector under paragraph 228(b) of the Tariff Act of 1930, note 1, supra, were properly classifiable under paragraph 372 of the Act as parts of specified machine tools. The important point is that in each of these four cases, the record established that the imported articles were used solely in connection with the machine tools involved and had no other use. The situation in the present case is quite different, however. For in the present case, plaintiff's proof (as we have seen) has failed to show that the imports involved were manufactured and dedicated

5. In view of the conclusion that the imported articles are not parts of jig-boring machine tools, we need not reach the

solely for use on jig-boring machine tools and had no other useful purpose.[5]

The protest is overruled, and judgment will issue accordingly.

WATSON, J., concurs.

additional question as to whether or not the projectors are in chief value of metal.