**C. F. LIEBERT, Customhouse Broker, Plaintiff,**

**v.**

**UNITED STATES, Defendant.**

**C.D. 3919; Protest No. 66/30765–25849.**

United States Customs Court, Second Division.
Nov. 12, 1969.

Glad & Tuttle, Los Angeles, Cal. (George R. Tuttle, Los Angeles, Cal., of counsel) for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Steven R. Sosnov, New York City, and Robert Blanc, Dept. of Justice, New York City, trial attorneys), for defendant.

Before RAO, Chief Judge, and FORD and NEWMAN, Judges.

RAO, Chief Judge.

The merchandise involved in this case, imported from Canada and entered at the port of Blaine, Washington, is described as back up roll assemblies. It was assessed with duty at 14 per centum ad valorem under item 674.53 of the Tariff Schedules of the United States, as parts of machine tools, and is claimed to be dutiable at 10 per centum ad valorem under item 674.55, as an accessory machine used with machine tools.

The pertinent provisions of said tariff schedules are as follows:

Work and tool holders and other parts of, and accessories used principally with, machine tools; * * *:

| | | |
|---|---|---|
| 674.50 | Tool holders ...........................15% ad val. | |
| | Other: | |
| | Parts: | |
| 674.51 | Cast-iron (except malleable cast-iron) parts * * * .................... 3% ad val. | |
| | Other: | |
| 674.52 | Parts of metal-working machine tools for cutting or hobbing gears ......20% ad val. | |
| 674.53 | Other parts .....................14% ad val. | |
| | Accessories: | |
| 674.55 | Machines ......................10% ad val. | |

At the trial plaintiff called Reginald E. Tyler, vice-president of Durand Machine Company Limited, manufacturer of machinery for processing plywood. He has been with the company for 13 years and his duties include sales, coordination of engineering, customer relations, follow-up to see that the machinery is performing satisfactorily, and all operations of the company in general. He is familiar with the item identified as a back up roll assembly, having designed the original one in 1965.

The witness testified that a back up roll assembly consists of the main pivoting head and pressure rollers, the hydraulic cylinder to exert pressure, the carrying frame, the hydraulic pump unit to supply the oil pressure to the cylinder, and the electric controls. It has its own carrying structure which has to be bolted to a floor adjacent to, or above, or on a veneer lathe, or it can go on a subsidiary framework, such as where there is a charger, an automatic device for putting logs into the lathe. It is designed and used solely with a veneer lathe, which produces the product known as veneer.

A veneer lathe, according to the witness, rotates a log cut to veneer dimension, usually 106 inches. Then a knife comes in contact with the log and goes in a set distance per revolution to give a cut of a predetermined thickness, thus producing veneer. In the course of this operation the veneer block or log is peeled down, the knife gets closer to the core, the block gets smaller in diameter and its strength reduces. When it is about 10 inches in diameter, the back up roll can be lowered onto the log where it exerts pressure on the log to stop it

from bowing out and hold it flat, thus allowing a better quality and more even thickness of veneer to be peeled. It is effective only in small diameters.

A brochure illustrating the merchandise and describing its features was received in evidence as exhibit 1. It depicts a large machine having a split type head with rollers resting on a log in a veneer lathe.

The witness stated that a back up roll assembly is not essential to the cutting of veneer by the lathe; that lathes have been made for over a hundred years without back up rolls, and that he had seen many plants which do not have back up rolls. He said that only certain logs are capable of being peeled down to a small enough diameter and that the same log could be cut without the back up roll. He explained that when a log is about 6½ inches or less in diameter, the use of the back up roll enables veneer of more even thickness to be cut because it holds the log in position and stops it from moving out from the knife.

Mr. Tyler testified that back up assemblies are designed to be used only with veneer lathes for the purpose described. They are not intended for a specific lathe but the mounting can be made to fit a particular lathe. The same back up roll can be used in many lathes.

The brochure, exhibit 1, states:
This machine has been designed primarily to prevent cores from bowing out in the centre owing to knife and pressure bar forces in a veneer lathe. This allows cores to be peeled down to a minimum diameter.

\* \* \* \* \* \*

Advantages

1. Veneer produced from blocks of all diameters is flat and buckle-free giving proportionately more sheet return.

\* \* \* \* \* \*

3. With the holding force against the block there is more tendency for a faulty log to hold together, giving more veneer output before breaking up.

\* \* \* \* \* \*

The issue presented is whether the back up roll here involved is a part of a veneer lathe (a machine tool) or is an accessory principally used therewith. Since Congress has included parts and accessories in the superior heading to items 674.50–674.56 and has provided for them separately, it is evident that it was making a distinction between them. In the Tariff Classification Study of November 15, 1960, which was before Congress when the Tariff Classification Act of 1962 was enacted, it is stated (schedule 6, pp. 272–273):

There are a number of jigs, fixtures, and other subsidiary devices or accessories which are principally used in connection with machine tools. Such devices, although principally used with machine tools, are not parts of any particular tool. \* \* \*

This appears to mean that subsidiary devices used with various machine tools which are not parts of a particular machine tool are provided for as accessories. Cf. Chas. Kurz Co. v. United States, 57 Cust.Ct. 73, C.D. 2733 (1966); Engis Equipment Company v. United States, 60 Cust.Ct. 436, C.D. 3413, 284 F.Supp. 798 (1968). It leaves open the question of whether a device which is used exclusively with a particular machine tool is a part thereof or an accessory.

What makes a particular article a part of another for tariff purposes has been frequently litigated. While many general statements have been made on the subject, the decided cases do not establish any set rule or principle for determining what is a part in all instances, Gallagher & Ascher Company v. United States, 52 CCPA 11, C.A.D. 849 (1964). In that case the court stated that whether a given article constitutes a part depends upon the nature of the so-called part and its function and purpose in relation to the article to which it attaches or with which it is designed to serve.

In order for an article to be considered a part of another, it must be dedicated to use with that article. United States v. American Bead Co. et al., 9

Ct.Cust.Appls. 27, T.D. 37873 (1918); United States v. Ford Motor Company, 51 CCPA 22, C.A.D. 831 (1963); Ford Motor Company v. United States, 56 CCPA C.A.D. 946 (1968). It has also been stated that it must be an integral, constituent, or component part, without which the article to which it is to be joined could not function as such article. United States v. Willoughby Camera Stores, Inc., 21 CCPA 322, T.D. 46851 (1933), certiorari denied 292 U.S. 640 (1933); United States v. J. D. Richardson Company, 36 CCPA 15, C.A.D. 390 (1948); United States v. John A. Steer Co., 46 CCPA 132, C.A.D. 715 (1959). Although this test is not definitive in all instances, articles which meet it have been held to be parts. Peter J. Schweitzer (Inc.) v. United States, 16 Ct.Cust. Appls. 285 T.D. 42872 (1928) (endless belts without which a paper-making machine would be incapable of performing its important, ordinary and proper function of making tissue grade paper); United States v. Carl Zeiss, Inc., 24 CCPA 145, T.D. 48624 (1936) (finders required for use with lenses not originally upon the camera but which permitted the wider use of the camera); F. T. Griswold Mfg. Co. v. United States, 36 Cust.Ct. 27, C.D. 1749 (1956) ("inscriber" essential for the complete and efficient operation of an optical testing instrument, known as a "straightedge"); Ster-Wood Corp. v. United States, 49 Cust.Ct. 302, Abstract 67196 (1962) (wire baskets or trays necessary for the efficient performance of a dishwasher); Wico Corporation v. United States, 60 Cust.Ct. 324, C.D. 3376, 282 F.Supp. 798 (1968), appeal dismissed February 7, 1969 (balls necessary for the functioning of a bowling game machine).

In addition it has been held that a device may be a part of an article even though its use is optional and the article will function without it, where the device is dedicated irrevocably for use upon the article and, once installed, the article cannot be used without it. United States v. Pompeo, 43 CCPA 9, C.A.D. 602 (1955); Trans Atlantic Company v. United States, 48 CCPA 30, C.A.D. 758 (1960); Gallagher & Ascher Company v. United States, supra; J. E. Bernard & Co., Inc. v. United States, 57 Cust.Ct. 143, C.D. 2744 (1966); Border Brokerage Company, Inc. v. United States, 58 Cust.Ct. 240, C.D. 2948 (1967).

In United States v. Pompeo, supra, the merchandise consisted of superchargers designed specifically for use on automobiles. The engines would run without them and extensive alterations were necessary to install them, but once installed, the engines would not operate if the superchargers failed. The court held (43 CCPA p. 14):

> In the instant case there seems to be no doubt but that the involved superchargers are "parts" of automobiles after they are installed upon the automobiles. Since the imported superchargers at time of importation are dedicated solely for use upon automobiles, as previously pointed out, and since when applied to that use they clearly meet the definition of "parts" established by the Willoughby case, we are of the opinion that they were correctly classified as parts for automobiles.

The merchandise in Trans Atlantic Company v. United States, supra, was brackets for door closers. The door closers would function without the brackets if mounted directly on the doors, but when mounted on door frames, the brackets were necessary. The brackets had but one commercial use, the mounting of a particular door closer on the door frame. The court held they were "parts" of door closers, stating (48 CCPA p. 33):

> In the present case, the purchaser of the door closer has the option to mount it either on the door frame or on the door. Once he decides to use the closer on the door frame the brackets, as the view finders in the Zeiss case or the lamps and horns in the Bosch case, become necessary and required to so mount the door closer if it is to be operated efficiently in this position.

When so used the brackets are attached to and clearly are "parts" of the door closers.

The *Gallagher & Ascher* case, *supra,* involved auxiliary heaters for Volkswagen automobiles. Installation required attaching a fuel line to a fuel tank, installing a socket of the heater body on a panel and connecting the electrical switches and wires to the electrical system of the car. Removal would necessitate sealing the holes in the bottom of the car, closing the hole in the gasoline tank, and removing the ducts and holes in the engine and driver's compartments. The court found that the heaters contributed to the safe and efficient operation of the cars in frigid temperatures and to the comfort of the occupants. It stated (p. 16):

> The facts of record that the auxiliary heater was optional equipment; that the Volkswagen came equipped with a conventional heater and that the automobile could be operated without the additional heater, are not of such vital import as to be determinative of the issue. When once attached to the automobile to which it was solely dedicated and in the manner disclosed, and in the performance of the function for which it was designed, it became a part of the automobile within the purview of paragraph 369(c) of the Tariff Act of 1930, as modified.

Nevertheless, not every article used with another becomes a part thereof. United States v. Willoughby Camera Stores, Inc. *supra* (tripods and cameras which each perform separate functions without any loss of essential characteristics); United States v. E. Leitz, Inc., 26 CCPA 418, C.A.D. 49 (1939) (range finders which could be mounted on cameras or used separately, the range finder not being essential to the proper functioning of the camera and merely aiding the operator to set the lens more accurately); United States v. Cody Manufacturing Co., Inc., et al., 44 CCPA 67, C.A.D. 639 (1957) (music boxes having figures of dancing dolls attached); Unit-ed States v. Fibre Making Processes, Inc., 33 CCPA 110, C.A.D. 323 (1946) (spiral heat exchangers serving as an auxiliary heating apparatus in a pulp making plant); Schick X-Ray Co., Inc. v. United States, 59 Cust.Ct. 108, C.D. 3088, 271 F.Supp. 305, 308, (1967) (hydraulic patient table dedicated to use with X-ray equipment). In the case last cited the court noted (pp. 112–113):

> Although essentiality may no longer be the touchstone in the determination of whether an article is a part under the principles developing from the recent decision of our appellate court in the case of Gallagher & Ascher Company v. United States, 52 CCPA 11, C.A.D. 849, it does not necessarily follow that all auxiliary articles are parts. Many of these objects, despite the fact that their usefulness is only in conjunction with other articles, retain a separateness of identity and a functional self-sufficiency which preclude their classification as parts.

According to the record presented here, a back up roll is not necessary for the proper functioning of a veneer lathe. In fact, after the installation of a back up roll, the veneer lathe operates without it until the log is reduced to 10 inches or less in diameter. Then the back up roll is lowered onto the log and exerts pressure on it, enabling the lathe to continue its operations on the log in the same manner as before. Thus, even after installation of the back up roll, the lathe will and does function without it, and the back up roll does not merge into or become an integral, constituent, or component part of the lathe. Its function is auxiliary to the operation of the lathe and its use aids in the production of a greater quantity and a better quality of veneer in the last stages of the process. It is not used during the entire operation and cannot be used with large logs. The lathe performs the cutting operation throughout and the back up roll, when used, exerts pressure on the log to hold it in position. Each performs its separate function and retains its separate identity.

In a recent case, T. D. Downing Company v. United States, 63 Cust.Ct. ——, C.D. 3873 (1969), we held that certain oilers, feeders, and straighteners, used with punch presses, either as fixtures permanently attached to the presses or attached to press plates designed for use with punch presses, were dutiable as parts of machine tools rather than as accessories. According to the record there, the articles were required for the performance of one of the functions of the punch press—its operation on coil stock. Thus, when the option to use the punch press on coil stock was exercised, the articles became necessary to the functioning of the press, without which it could not accomplish its task.

■ In the instant case, the back up roll is not needed for the operation of a veneer lathe in the production of veneer nor does its installation prevent the lathe from carrying on without it, even on small logs. It merely holds the small log in position so that the lathe may cut it more effectively. That is the role of an accessory—to add to the effectiveness of something else. (Webster's Third New International Dictionary.)

Since the provisions of the tariff schedules, *supra,* provide separately for parts of, and accessories used with, machine tools, it is clear that a distinction was intended. The Tariff Classification Study mentions as examples of "accessories" jigs, fixtures and other subsidiary devices or accessories. Webster's Third New International Dictionary defines "jig" as "a device used to maintain mechanically the correct positional relationship between a piece of work and the tool working on it." Another authority states that jigs and fixtures serve the purpose of holding and properly locating a piece of work while it is being machined. Engineering Encyclopedia, Franklin D. Jones.

The back up roll in the instant case performs a similar function. It is an auxiliary device which holds the piece of work (the log) in position while the tool (the veneer lathe) works upon it.

We conclude that the back up roll involved herein is an accessory used with the veneer lathe from time to time and is not a part thereof. The protest is sustained and the merchandise is held dutiable at 10 per centum ad valorem under item 674.55 of the Tariff Schedules of the United States, as an accessory machine, used principally with machine tools. Judgment will be entered accordingly.

NEWMAN, Judge (concurring).

I concur—but wish to add some observations.

In their respective opinions, my distinguished colleagues have reviewed a number of decisions arising under previous tariff acts which involved the question of whether various articles were classifiable as "parts" of certain merchandise with which they were used, or were dutiable under some alternative classification, usually a "basket" provision. In some of those cases the articles were held to be "parts," and in others they were held not to be "parts." Those decisions have been amply discussed by my associates, and it is unnecessary to elaborate further on what the courts have said concerning "parts." Rather, I wish to emphasize that in these so-called "parts" cases, there was no competing provision for "accessories," as in the tariff schedule provisions now considered.[1] The back up rolls fit precisely the common meaning of the term "accessories"—a thing that contributes subordinately to the effecting of a purpose, but is not essential. See Webster's New International Dictionary, Second Edition (1953).

According to the record, the veneer lathes were frequently purchased and used without back up rolls, and in point

1. In the recent case of T.D. Downing Company v. United States, 63 Cust.Ct. ——, C.D. 3873 (1969), this court construed the competing provisions involved in the present case. *Downing,* however, is distinguishable for the reasons pointed out by Chief Judge Rao.

of fact had been so used for over one hundred years. This is indeed significant in determining whether or not the back up rolls are an accessory to the veneer lathes. It indicates to me that the users of the lathes who did not have back up rolls considered the lathes themselves to be complete machine tools, possessing all the essential, customary, and basic parts. Moreover, such fact shows that many users of the lathes either did not wish to peel veneer from small diameter stock (less than ten inches), or did not regard the use of back up rolls sufficiently important to warrant purchasing them. It does not appear that the lack of a back up roll significantly impaired or limited the use of the veneer lathes in the performance of their intended function. In enhancing the effectiveness of the lathes in peeling veneer from small diameter stock, the back up rolls were, in my view, operating as an accessory machine used with a machine tool. Therefore, they were properly dutiable under item 674.55, TSUS, as claimed by plaintiff.

The protest, accordingly, should be sustained.

FORD, Judge (dissenting).

I am unable to agree with the decision reached by my colleagues. While there have been many instances where an article was held to be an accessory rather than a part under previous acts, such designation was dictum, there being no statutory provision for accessories. Just what an accessory is for tariff purposes therefore has never been determined and hence we have no guidelines to distinguish an accessory from a part. The recent decision of this court in T. D. Downing Company v. United States, 63 Cust. Ct. ——, C.D. 3873 (1969), considered the same statutory provisions as are involved herein. The court in the *Downing* case, *supra*, held the merchandise involved to be parts since they served a useful function and were dedicated to the machine.

I am of the opinion however that the terms accessories and parts are mutually exclusive. Therefore, if the back up rolls are for tariff purposes parts, they cannot be accessories. Determination of the term should be based on the common meaning and each case decided on the basis of its own facts—technical and legislative.

The back up rolls involved herein are designed, constructed and dedicated for use solely with veneer lathes and while not used all of the time, do perform a function necessary for the efficient operation of the veneer lathes. The mere fact that the back up rolls are not used until the log is 10 inches or less in diameter, or are not used with every veneer lathe, or that such lathes have been manufactured for a hundred years is of little consequence. The court may take judicial notice that logs are neither structurally perfect nor uniform in size. The back up rolls however permit the peeling down of *all* logs to a minimum diameter and allow the veneer lathe to perform important, proper and necessary functions in producing a better quality and greater quantity of veneer. Utilization of the back up rolls is therefore essential to the uses mentioned.

The mounting brackets for the door closers in Trans Atlantic Company v. United States, 48 CCPA 30, C.A.D. 758 (1960), were not used in all instances but were necessary when mounted on a door. The court held said brackets to be parts. Basically the same situation is involved in the instant case. The back up rolls are not required but when used perform a necessary and vital function.

Similarly, in United States v. Pompeo, 43 CCPA 9, C.A.D. 602 (1955), not every car has a supercharger nor do any require it. However, when installed it performs a necessary function as a part.

In Gallagher & Ascher Company v. United States, 52 CCPA 11, C.A.D. 849 (1964), certain auxiliary heaters for Volkswagens were held to be parts of automobiles notwithstanding the fact

that a heater was built into the car in addition to the one involved therein or that said heater was optional. The court of appeals took the position that the heater once installed became part of the automobile because of the function it performed, i. e., the safe and efficient operation of the automobile. The back up rolls involved in the instant case when used provide for the efficient operation of the veneer lathes in the production of quality veneer from logs under 10 inches in diameter.

In United States v. Carl Zeiss, Inc., 24 CCPA 145, T.D. 48624 (1936), the appellate court held certain view finders which were required to be used when additional lenses were used with the camera, to be parts, notwithstanding the fact that the cameras were sold as operable cameras without the use of the additional lenses or view finders.

The situation in the case of Peter J. Schweitzer (Inc.) v. United States, 16 Ct.Cust.Appls. 285, T.D. 42872 (1928), is somewhat analogous to the case at bar. In the *Schweitzer* case, certain papermaker's felt was necessary for the production of tissue grade paper but not for the production of heavier grade paper. The Court of Customs Appeals held said felts to be parts since they were essential parts of the machines for making tissue grade paper.

The legislative history quoted in the majority opinion does not in my opinion substantiate the position taken by my distinguished colleagues. The indication of the articles covered such as jigs, fixtures and other subsidiary devices does not bring the back up rolls within the purview of such language when the following is taken into consideration: "Such devices, although principally used with machine tools, are not parts of any particular tool. * * *" The back up rolls involved herein are not only principally used with veneer lathes but are used solely therewith, serve a useful function, and are not used with other lathes or other machine tools. It would appear the intent of Congress in enacting the provision for accessories contained in item 674.55 was not to include parts which are used solely with a particular tool to wit, a veneer lathe. Factors necessary for determination of what constitutes a part include but are not limited to articles required by law or which are necessary to the operation or safety of the machine.

The fact that the back up rolls are used solely with veneer lathes and perform a necessary function for the efficient operation of the lathes brings it within the purview of General Interpretative Rule 10(ij) covering parts.

Accordingly, I would for tariff purposes hold the involved back up rolls to be parts, as classified under the provisions of item 674.53 of the Tariff Schedules of the United States.