(C.D. 4465)

HENRY A. WESS, INC. *v.* UNITED STATES

Court No. 68/68300

(Decided August 14, 1973)

*Allerton deC. Tompkins* for the plaintiff.

*Irving Jaffe*, Acting Assistant Attorney General (*John A. Gussow*, trial attorney), for the defendant.

RAO, Judge: The merchandise involved in this case, three-jaw lathe chucks and four-jaw independent chucks, was assessed with duty at 12.5 per centum ad valorem under item 674.53, Tariff Schedules of the United States, as modified by Presidential Proclamation 3822, T.D. 68–9, as parts of machine tools. It is claimed that the articles are properly dutiable at 9 per centum ad valorem under item 674.55, as modified, as accessory machines used principally with machine tools.

The pertinent provisions of the tariff schedules, as modified, are as follows:

| | | |
|---|---|---|
| | Work and tool holders and other parts of, and accessories used principally with, machine tools; tool holders for the mechanical hand tools provided for in items 651.27, 674.70, and 683.20: | |
| 674.50 | Tool holders_____ | * * * |
| | Other:<br>    Parts: | |
| 674.51 | Cast-iron (except malleable cast-iron) parts, not alloyed and not advanced beyond cleaning, and machined only for the removal of fins, gates, sprues, and risers or to permit location in finishing machinery _____ | * * * |
| | Other: | |
| 674.52 | Parts of metal-working machine tools for cutting or hobbing gears_ | * * * |
| 674.53 | Other parts_____ | 12.5% ad val. |
| | Accessories: | |
| 674.55 | Machines _____ | 9% ad val. |
| 674.56 | Other _____ | * * * |

It is conceded by the pleadings that each of the chucks is a mechanism designed to hold a workpiece on a revolving spindle so as to permit a machine tool to work upon the revolving workpiece or to permit the workpiece to be inspected while revolving; that it is a work holder and a machine.

Three witnesses were called at the trial: Donald D. Phillips, eastern district manager of the importer, R. K. LeBlond Machine Tool Company, manufacturer and seller of machine tools, parts, and accessories, called by plaintiff; and Edward J. Shages, president of Cushman Industries, Inc., a manufacturer of holding devices and other items associated with machine tools, and John L. Way II, executive vice-president of said firm, both called by defendant.

There were received in evidence illustrations of the chucks in litigation depicted in a LeBlond catalogue (exhibit 1); an illustrative sample of a three-jaw universal chuck with a three-piece wrench, smaller than the imported merchandise (exhibit 2); illustrations of a three-jaw universal chuck and a four-jaw independent chuck sold by Cushman Industries (exhibit A); a small cutaway sample of a Cushman three-jaw universal chuck with wrench (exhibit B); a sample of a

small Cushman four-jaw independent chuck with wrench (exhibit C), and an illustration of a lathe (exhibit D).

It appears from this evidence that a chuck is a heavy metal mechanism, consisting of a circular body having a scroll and pinion mechanism, and three or four jaws which can be operated by a wrench so as to secure tightly a workpiece inserted into the chuck. All the jaws of the three-jaw chuck move together, but the jaws of the four-jaw independent chuck are adjusted separately in order to hold an eccentric piece or a rectangular or square piece. Such chucks are mounted on the spindle of a lathe, a simple operation which takes a matter of minutes. The workpiece is then inserted and the jaws tightened. The chuck holds the work and puts it in proper relation to a cutting tool on the lathe which is brought to bear against the work part, for machining the necessary configuration, or threading, or boring.

According to the record, a lathe is a basic machine tool which does almost any kind of machining on round metal parts. It must have a work-holding device in order to operate for the purpose for which it is designed. Such work holders need not be chucks, but may be other devices, such as lathe dogs, collets, face plates with clamps, fixtures, and perhaps jigs. One witness did not regard a jig as a holding device, but as a drill jig, which is used to position a drill, for drilling a hole at a predetermined spot on a drill press. Another said it was a work holder and could be used on a lathe, a bore press, a radial drill, or almost any machine tool.

There is no evidence in the record to establish that a chuck is used on any machine except a lathe. One witness was asked whether it could be used on a machine for cutting and hobbing gears, but he was not familiar with that machine.

The witness Phillips testified that his firm handles articles known as parts of lathes and others known as accessories for lathes. He said that a part was something essential to the operation of a lathe, such as lead screws, spindles, bearings, and gears, whereas an accessory was not essential to the operation of a lathe and was offered as an option, such as jigs, fixtures, collets, taper attachments, and micrometer carried stock. He considered chucks as accessories, because they were not essential to the operation of a lathe since some other type of work holder could be used. He said he had never sold them as parts of lathes and that they were listed in his firm's price lists as accessories. Mr. Way regarded the gearing and spindles as parts of the machine, and chip guard coverage aprons protecting the operator as accessories.

Mr. Phillips did not know whether a chuck was the most common type of work holder sold with his firm's lathes. Mr. Shages said, however, that in his experience a chuck was the most common work-holding device used in machine lathes and that almost all lathes were sold

equipped with chucks. He stated that a work-holding device was an essential part of a lathe because without one, the lathe was useless.

Mr. Phillips testified that LeBlond sold lathes without tool holders or work-holding equipment and that the customers added such devices. In his opinion a lathe is complete nonoperationally without them. Mr. Way said a lathe is still a lathe without a chuck but it could not do any work. He also said that to his knowledge, LeBlond sells chucks independently of the lathe as replacements.

It is clear from the record that the imported chucks are work holders; that they are chiefly, if not solely, used with lathes; that lathes cannot function for the purpose designed without work holders; that work holders other than chucks could be and are used with lathes; that chucks are easily attached and removed; that other chucks or work holders could be attached instead.

The question presented is: Where a work holder of some kind is essential to the operation of a lathe and the operator has the option of selecting chucks or some other available work holder, are chucks parts of lathes or accessories for use with lathes, for tariff purposes?

In items 674.51–674.56, Congress has provided separately for work holders and other parts of, and accessories used principally with, machine tools. In the Tariff Classification Study of November 15, 1960, which was before Congress when the Tariff Classification Act of 1962 was enacted, it is stated (schedule 6, pp. 272–273):

> There are a number of jigs, fixtures, and other subsidiary devices or accessories which are principally used in connection with machine tools. Such devices, although principally used with machine tools, are not parts of any particular tool. Item 674.55 would cover such accessories which are machines at the rate of 12.5 percent ad valorem which is the approximate arithmetical average of the existing rates in the "basket" provisions of paragraphs 353 and 372. Item 674.56 would cover "other" accessories at the rate of 19 percent ad valorem which is the rate presently applicable under paragraph 397 to most jigs, fixtures, and other accessories which are not in themselves machines.

In *C. F. Liebert, Customhouse Broker* v. *United States*, 63 Cust. Ct. 357, C.D. 3919, 305 F. Supp. 1400 (1969), *aff'd sub nom. United States* v. *C. F. Liebert, Customhouse Broker*, 59 CCPA 43, C.A.D. 1035 (1971), this court, referring to the above statement, said (p. 360):

> This appears to mean that subsidiary devices used with various machine tools which are not parts of a particular machine tool are provided for as accessories. Cf. *Chas. Kurz Co.* v. *United States*, 57 Cust. Ct. 73, C.D. 2733 (1966); *Engis Equipment Company* v. *United States*, 60 Cust. Ct. 436, C.D. 3413, 284 F. Supp. 798 (1969). It leaves open the question of whether a device which is used exclusively with a particular machine tool is a part thereof or an accessory.

In that case the merchandise consisted of a backup roll assembly used with a machine tool known as a veneer lathe to produce veneer by rotating a log cut to veneer dimensions and peeling from it with a knife a sheet of veneer of predetermined thickness. As the peeling progressed, the knife drew closer to the core of the log, the diameter of the log decreased, and its strength diminished. Then, a backup roll assembly might be lowered onto the log, where it exerted pressure to stop the log from bowing out and held it flat, allowing a better quality and more even thickness of veneer to be peeled. It was held that the backup roll assemblies were accessories used with veneer lathes and not parts of such lathes. In affirming the decision of this court, the Court of Customs and Patent Appeals quoted with approval the following language from our opinion:

> In the instant case, the back up roll is not needed for the operation of a veneer lathe in the production of veneer nor does its installation prevent the lathe from carrying on without it, even on small logs. It merely holds the small log in position so that the lathe may cut it more effectively. That is the role of an accessory—to add to the effectiveness of something else. (Webster's Third New International Dictionary.)

> Since the provisions of the tariff schedules, *supra*, provide separately for parts of, and accessories used with, machine tools, it is clear that a distinction was intended. The Tariff Classification Study mentions as examples of "accessories" jigs, fixtures and other subsidiary devices or accessories. Webster's Third New International Dictionary defines "jig" as "a device used to maintain mechanically the correct positional relationship between a piece of work and the tool working on it." Another authority states that jigs and fixtures serve the purpose of holding and properly locating a piece of work while it is being machined. Engineering Encyclopedia, Franklin D. Jones.

> The back up roll in the instant case performs a similar function. It is an auxiliary device which holds the piece of work (the log) in position while the tool (the veneer lathe) works upon it.

There is a clear distinction between the facts in that case and those in the present one. There, the veneer lathe could and did operate without the backup roll. The use of the latter in the final stages of cutting the log permitted the lathe to function more effectively, but was not essential to its operation. Here, a work holder of some kind is essential for the functioning of the lathe. The question is whether chucks are classifiable as parts of lathes, when they themselves are not essential to the operation of a lathe, but some kind of work holder is.

In a number of cases it has been held that optional equipment is a part of an article, where, once installed, that article will not function without it. *United States* v. *Antonio Pompeo*, 43 CCPA 9, C.A.D. 602 (1955); *Trans Atlantic Company* v. *United States*, 48 CCPA

30, C.A.D. 758 (1960); *Gallagher & Ascher Company* v. *United States*, 52 CCPA 11, C.A.D. 849 (1964).

In the *Trans Atlantic Company* case, after discussing previous cases, the court said (p. 33) :

> In all of these cases, as in the present case, there was an option on the part of the purchaser of the article to use it either with or without the imported auxiliary devices. When the purchaser elected to use the article with such auxiliary devices, the devices were held in each case to be parts of the article for which they were designed and intended for use. In all these cases the articles could have been used without the imported auxiliary device. In these cases the court considered the function of the auxiliary part when the purchaser elected to use it as a part of the article and did not consider it determinative that the article could function without the auxiliary part.

It has also been held that the mere fact that one or the other of two articles each serving the same purpose may be used optionally for the completion of a machine does not prevent each of said articles from being a part of the machine. *Steel, Inc.* v. *United States*, 24 CCPA 423, T.D. 48872 (1937) ; *Steel, Inc.* v. *United States*, 28 CCPA 77, C.A.D. 128 (1940). In those cases it appeared that certain ore-grinding mills could not operate without forged steel grinding balls or a distinctive kind of hard rock. It was held that the steel balls were component parts of the mills without which they could not function as such. In the case first cited, the court stated (p. 426) :

> The more serious of appellant's contentions is that it is optional, according to the testimony, for the user of a grinding mill to use steel balls such as are here involved or an imported hard rock, and that therefore steel balls are not indispensable to the operation of the grinding mill. We have given this matter consideration and conclude that the mere fact that two articles each serving the same purpose may be optionally used for the completion of a machine does not prevent each of said articles from being a part of a machine. * * * It is sufficient to say that, in order for an article to be a part of a machine, it is not necessary that there be no substitute for such article.

> In the case of *United States* v. *Sussex Print Works*, 17 C.C.P.A. (Customs) 257, T.D. 43686, it was held that unengraved copper rollers intended for use in printing designs on silk cloth are parts of textile machinery. Had it been shown in that case that steel rollers were also used for that purpose, we do not think that this fact would have affected our conclusion.

See also *Ster-Wood Corp.* v. *United States*, 49 Cust. Ct. 302, Abstract 67196 (1962), where it was claimed that certain wire baskets, trays and inserts for holding dishes in washing machines were parts of electrical dishwashers. The Government claimed that the articles were not essential to the operation of the machines because wooden or plastic

racks might be substituted; that since the machine would function equally well with any of these alternatives, neither might be characterized as necessary to its completion nor considered as parts of dishwashers for tariff purposes. The court rejected this argument, however, and held that any rack designed for use in a dishwashing machine which served the same purpose constituted a part of the machine.

More recently, in *American Feldmuehle Corp. et al.* v. *United States*, 64 Cust. Ct. 462, C.D. 4021 (1970), it was held that porcelain insert blanks and tool tip blanks, processed after importation and used with various machines for cutting metals, such as lathes and boring mills, were classifiable as machinery parts of porcelain. The tips, known as "throw-away" inserts, were discarded after all the cutting corners had been used and new tips inserted in the same tool holder. The machines would not serve any function without tool tips. The court said (pp. 468, 469, 470):

> In the instant case it appears that these tool tips or inserts are used with certain types of machines and that without such or like tips, the machines would be unable to carry out their intended function. While the use of any particular tip is optional and lasts only until the tip is worn out, tips of some kind must always be employed.
>
> \*  \*  \*  \*  \*  \*  \*
>
> Since tool tips or inserts are essential to the proper functioning of certain machinery in its usual manner, particular tool tips once installed, become parts of that machinery.
>
> \*  \*  \*  \*  \*  \*  \*
>
> \* \* \* It is clear from the record that tool holders and tool tips are essential for the functioning of the type of machine which employs them, and under the authorities cited are machinery parts.

Likewise, in the instant case, while the use of any particular work holder is optional and another may be substituted, work holders of some kind must always be employed. Since work holders are essential to the operation of lathes for the purpose designed, particular work holders, such as chucks, are parts of lathes.

For the reasons stated, the action is dismissed. Judgment will be rendered accordingly.